Jones, Chief Justice.
This is an action on a policy of insurance, to recover for loss and damage to goods by fire. By the terms of the contract, The Fulton Fire Insurance Company, the defendants, insured De Forest & Son, the plaintiffs, against loss or'damage by fire,- to the amount of $10,000 dollars, on goods and merchandise, hazardous and not hazardous, as well the property of the assured, as held by them in trust or on commission, contained in the store No. 82 *101 South-street,,, for the term of one year. And the insurers promise and agree to make good to the insured, all such loss or damage, as should happen by fire to the property ; such loss or damage to be estimated according to the true and actual value of the property at the time the loss should happen. A fire happened within the year, by which loss and damage was sustained on goods and merchandise, partly the property of the plaintiffs, and partly held by them on commission, then in the store described in the policy, to a large amount. The right of the assured to indemnity is admitted ; and the question is upon the extent of the liability of the insurers for the goods held on commission ; or, in other words, what the insurable interest of the plaintiffs was therein. The plaintiffs insist upon the right to recover the full amount of the loss and damages to those goods by the fire ; and the defendants contend, that they are bound to indemnify to the amount only, of loss, sustained by the plaintiffs in their own right thereby.
It is admitted that they had an interest in the goods they held on comission, and are entitled to recover to the amount of their advances thereon, with interest, and their mercantile commissions and charges as factors. But the insurers insist, that those were the only interests the plaintiffs had at risk at the time of the fire, and that all they can claim is an indemnity to themselves for their own loss.
The plaintiffs are insured on goods held by them on commission . they had no beneficial interest or right of property in those goods beyond the amount of their liens and just claims, for their commissions on the sale, and the reimbursement of their advances and charges on account of the principals, to whom the goods belonged. They were the consignees and factors of the general owners, with powers to sell; and in that character they had the right of possession, and the actual possession of the goods, and a special ownership against all the world, with the exception only of the principals, which entitle them to hold and dispose of the goods—to reclaim them if improperly usurped, and to maintain actions of trover for them as their own, if they chance to come into the possession of others, and are wrongfully detained. And whether that possession and *102 special ownership gave them an insurable interest under this special contract or not, is the material question. There can be no doubt of the right of the factor to insure for his principal: and ad-§' su°h insurance to be made of his own accord, and without the orders, express or implied, of the principal, the act of the agent might be affirmed, and the contract rendered binding on the insurers by the subsequent assent of the principal. But in such case, the insurance being made for the principal, the claim for the loss must also be for the principal, and not for the factor; and the interest must be averred hi pleading, and shown in proof, to be in the consignor. But the question we arc now to consider is, not whether the factors had the right or the power to insure the interest of their principals, but whether they had such an insurable interest in the goods which belonged to their principals, but were held by them on commission for sale,as to give vitality to a contract of insurance upon them in their ownnames asfor their own account. For this is an insurance by the plaintiffs for themselves, and tbeymust show aninsurableinterestinthemselvestoentitlethemto recover for the loss. So the plaintiffs themselves treat the contract on which they sue. The declaration proceeds on that ground : it predicates the loss it claims, as the loss of the plaintiffs themselves, and substantially avers the interest to have been in them. The proof of the averment was, that they held goods on commission for sale, as factors, which were deteriorated by the fire to the amount of the claim. To which the defendants object, that the actual interest of the insured in those goods, was the amount of the advances made on them, and the commission that would have been earned by the sale of them; and that the recovery must be limited to that amount. And it is clear, that to entitle them to recover the entire amount of the loss upon those goods, it must be shown that the possession and special ownership established by the proofs in the cause constituted an insurable interest, and that they had a right to insure that interest in their own names, without any further disclosure of the peculiar nature of the interest, than that they held the goods on commission.
It is well settled, that an insurable interest, in mercantile language, does not necessarily import an absolute right of property in the thing insured. A special or qualified interest is equally *103 the subject of insurance ; and it has often been determined, that w each distinct interest in the same subject, may be protected by a separate policy on the subject, for the party interested in it. The mortgagor and mortgagee may both insure; so may the trustee , , . , , . and the cestuy que trust; and so may every party who has any special interest to protect, or who represents the property as the qualified owner of it; and in the latter class of cases, the sole question is, whether the special interest alone, or the entire subject is covered by a policy effected upon the property in the name of the qualified owner. And that question may turn upon the nature of the ownership or interest, the purposes for which the property is held, and the powers incident to the relations of the special owner, or necessary to the safety of the insured premises; or it may be settled by usage and course of dealing.
It has been held, that captors have an insurable interest in the prize before condemnation, [The Omoa case, Park on In. 358.*] on the ground of possession, and the inchoate right of property acquired by the capture, and the necessity of permitting them to insure the property, which the original owner had no longer any interest to protect. And in the case of Stirling v. Vaughan, [11 East 619.] the same general question came under review, and the court decided that the prize might be insured by an agent, and interest averred in the captors: and they put the case substantially upon the ground of actual possession of the property, with the general right to retain it against all the world, subject to the release of it by the crown to the original owners before condemnation. But the case of Lucena v. Crauford [3 Bos. & Pul. 75.] is yet stronger. In that case, commissioners appointed under an act of parliament, for the custody, care, sale and management of such ships and cargoes, belonging to subjects of the United Provinces as should be brought into the ports of the United Kingdom, were held to have an insurable interest in Dutch ships and cargoes on their passage to England, which had been taken by a British cruiser, under the instructions of the admiralty, and sent in to be detained provisionally. It was a case in the Exchequer Oham *104 her, upon a writ of error from a judgment of the court of King’s Bench. That judgment was in favour of the assured, and it was affirmed by all the barons of the court of exchequer and judges of the common pleas, except Mr. Justice Chambers. The judges, ...... .. , who affirmed the judgment, assimilated the commissioners under the act to trustees and factors. They all held, [and Chambers, the dissenting judge, concurred with them in holding,] that it was not necessary for an assured, to have a beneficial interest in the property insured; but that it is sufficient if he be clothed with the-character of a trustee, an agent or a consignee ; and that if the commissioners could be considered in either of those capacities, they had an insurable interest; and it was held, that they might be considered as trustees for the crown, or for the persons who should be ultimately entitled to the property, as general agents, for the purpose of disposing of the property on its arrival, or as statutable consignees ; and that it was not necessary that the particular cestuy que trusts, should be ascertained at the moment of insurance. That they might be trustees for persons unknown, or for objects not precisely ascertained at the time the insurance was effected; yet, if they were trustees for any purpose, they acquired from that character a sufficient interest in the trust property to insure. It was objected in that case, that the Dutch commissioners did not resemble consignees, because those commissioners were directed to sell and dispose of the property entrusted to them, according to the instructions they should receive from government. But to this the judges answer, that many consignees receive goods with orders to attend to the directions of the consignor as to their disposal, and yet they were not the less able to insure. The commissioners, it was conceded, would not have been at liberty to disobey the directions of the government, from whom their commission was derived; but it was observed,. that in default of directions they, like other consignees and trustees, had the sole management in themselves, and might act upon their own judgment.
This case has a direct bearing upon the question before us, and if the principle of it be correct, would seem to settle the present controversy. The judges throughout, assert it as an established *105 principle, that a consignee of goods for sale, may insure the property he holds under the consignment, as his own, and that he derives his insurable interests from the relations in which he stands to the property as consignee, and his possession of it and power over it, in virtue of that relation, and not from any orders or authority, express or implied, from the consignor to insure. The consignee is coupled with the trustee of property, and the same general and unqualified power to insure, is ascribed to both. Now, the insurable interest of a trustee, in the trust property, is admitted. How, then, if the opinions of these judges are to be relied on, can the insurable interest of the consignee in the goods he holds on consignment, or sale, be questioned 1 In the case of the Dutch commissioners, the court went much farther than we are required to go. It was there held, that a marine insurance on the Dutch ships and cargoes under detention, or provisional capture, might be insured by the commissioners against maritime risks on their passage, and before they came into the psosession„ and under the charge, of the commissioners. It is sufficient for the decision of this cause, that the consignee should have the power to insure the goods, entrusted to him.for sale, and which he has in his actual possession and charge, against loss or damage by fire, in his own warehouse. And without such a power, he will be unable to extend the same protection to the goods of his principals, that common prudence requires him to give to his own property.
But it may be said, that the case of Lucena v. Craufurd was afterwards reversed by the House of Lords : and the fact is so. But that reversal was upon the ground, that one of the vessels for which an indemnity had been recovered, was not lost until after hostilities had been declared against Holland, whereby the vessel was impressed with the character of enemy’s property; and if she had arrived-in England, could not have come into the possession of the commissioners, whose powers were adapted and restricted, to the case of provisional capture of the property of friends, authorised by the British government, from motives of policy, under the peculiar circumstances of Holland at the time \ but no opinion xyas expressed as to the insurable interest of the *106 commissioners in the property which was lost before the decíaration of hostilities, and therefore might have come into their posgeggjon ag commission ers. And it was agreed that the action wag afc aUy rate, sustainable for the loss of the ship on the count which averred interest in the king. On these grounds a venire facias de novo was ordered, in order to bring the case more fully before the court. That reversal, therefore, did not unsettle the principle for which I contend ; and the views taken by Lord Eldon, whose opinion was followed by the Chief Justice of the King’s Bench and the Chancellor, and adopted by the house, strongly support it.
He recognizes the principle, that the actual possession of property, coupled with the right of possession, may confer upon the holder, who has neither the legal title, nor the absolute interest, the power to insure it as his own ; for he admits that the king has an interest in a prize before condemnation, for the purpose of insuring the property. He would seem, indeed, to dissent from the doctrine, supposed to be laid down in the Omoa case, that the ex-jrectation of a grant from the crown, gives the captors such an interest in the arrival of the prize, as to entitle them to insure it, in their own names, and for their own benefit. But he puts his dissent upon the ground, that the insurable interest was in the king, as the person who had the jus possessions, and that the possession of the captors, notwithstanding the liabilities they were under, and their just expectation of a grant from the crown, were still held by them, as agents of the king, as their principal, and could only entitle them to insure the property in his name, and for his benefit. And in the notice which is taken of the proposition, assimilating the commissioners to trustees, consignees and agents, the insurable interest of the trustee in the trust property is expressly acknowledged, and the right of the consignee to protect by insurance, the goods he holds on consignment for sale, is impliedly conceded. A trustee, his lordship observes, has a legal interest in the thing, and therefore may insure : and so, he adds, a consignee has the power of selling. He here refers to factors, who hold the goods of ¡heir principals for sale on commission, and obviously considers the right to insure-as incident 1o the ple *107 nary powers of such factors, over the goods entrusted to their agency. For he observes, that there are different sorts of consignees : those who have the power to sell, manage and dispose of the property, subject only to the rights of the consignor, and those who have a mere naked right to take possession of the goods. And he adds, that he would not say that the latter might not insure, if they state the interest to be in their principals.
These comments upon the rights and powers of these two classes of consignees, cannot, I think, be misunderstood. The fair import of them is, that the consignee with the power of sale has an insurable interest in the property he holds under consignment, and may insure it in his own name, and as his own ; but ■that the consignee who lias the mere naked right to take possession of the property, has no insurable interest in it; and though he may insure it for his principal;—yet, to give validity to the contract, he must state the interest to be in the consignor. In no other sense are the expressions of his Lordship intelligible," or would they have any bearing upon the question before him." And taking them in that sense, they sanction the principle distinctly affirmed by the court of Exchequer Chamber, that a factor, clothed with the power to sell, has an insurable interest in the property held by him under the consignment, and may insure it in his own name. This conclusion derives additional force, from the opinions of the judges, who were called upon for their opinions, and severally expressed them to the house on the point. The fifth question put to them was, in substance, whether the plaintiffs, as commissioners, had such an insurable interest in the ships and goods which the policies purported to cover, as to enable them to effect a legal and valid insurance thereon, for their own use, benefit and account, as commissioners. And to this question all the judges, except Justices Chambre and Lawrence, answered in the affirmative, as to all the ships. They assimilate the commissioners with consignees ; and they assume, as an acknowledged principle, that a consignee, without any beneficial interest in himself, is agent for the consignor, and may insure for his benefit. Again : they say that no one ever questioned but a consignee or agent, of the description spoken of by them, (and they speak *108 of a consignee for the management and sale of goods) might make an insurance for the benefit of the owner and person enti-^ed, and for whom he, as consignee, is authorised to act. The Para^ between the commissioners and a consignee runs through the opinion; and the right of the commissioners to insuie in their own names, and to aver interest in themselves, is defended on the strong analogy approaching to identity with consignees, whose power to insure the goods consigned to them, and held by them-6for sale, is assumed as indisputable. And in this view of that point, Chambre and Lawrence, the two dissenting judges, concur with the rest of the judges. Chambre, J. observes,, that a consignment is a species of mercantile conveyance operating upon the particular effects consigned; and Lawrence, J. substantially a dmits the insurable interest of a consignee for sale.
From this case, then, which, from the discussion it underwent, and the judicial opinions brought to bear upon it, is entitled to the highest consideration, I deduce the proposition, that a consignee, with general powers to manage and sell the property, has an insurable interest in the goods in his possession as consignee, and may insure them in his own name, and aver the interest in himself.
I have been induced to examine these cases so much at large, not from any direct decision they contain on the subject I am discussing,but because they recognise so clearly and so fully the insurable interest of a consignee in the goods consigned to him for sale; a principle, which if sound, must, I think, be decisive of the question in this cause. And I regard these cases as much stronger,from the consideration that the important principle, so material to the validity of the insurance before us, is not discussed, or treated as a doubtful point, or an open question, but is assumed as a well settled axiom, and a point perfectly and entirely at rest.
It is stated on the one side, and admitted on the other, that the right of the consignee to insure the goods he holds for sale on commission, is indisputable; and the only question was, whether the persons insuring in those cases, came within the description of consignees, and had made the insurances in question in that character; and the reasons given for the rule show it to be based *109 on foundations too solid." to be" easily shaken. The consignee is viewed in the light of a substitute for the consignor, with his rights and clothed with his powers; the absolute and unqualified owner in possession as against all others, except the consignor, and, whose title is defeasible by that power alone from whence it eminates.
A title, possessing so many of the properties of absolute ownership, must surely confer as high an interest as that which is vested in a trustee. The distinction attempted to be drawn between them, in favour of the trustee, to the prejudice of the factor, is purely technical. The trustee, it is said, has the legal title, the consignee has not. But that distinction, if important, is too broadly stated. The consignee has the full and exclusive possession of the property; and as long as the relation of factor subsists, is entitled to retain that possession against all the world. Most generally, he holds a bill of lading of the goods, vesting the legal title to the property itself, in him, or some acknowledgment of him by the consignor as absolute or qualified owner. Prima facie, then, he is, when clothed with any such document, the legal owner, and perhaps it would not be too bold a proposition to predicate of him, that the act of consignment, accompanied with full and exclusive possession,and the absolute power of sale, of themselves constitute him a trustee for the proprietor, and vest in him the legal ownership, for all the purposes of his trust, with the powers necessary for the preservation of the property as well as the performance of the trust upon which it is held. Certainly such a connection with the property approaches very near, if it does not come fully up to, the character of a trust. The consignee has an interest in the safety and preservation of the goods, consigned to him for sale, which the destruction or deterioration of them by fire would effect. He is bound also, to consult the interest of his principal in the management and care, as well as the sale of the goods, and insurance against loss and damage by fire, during the time the property continues in the warehouse for sale, as a measure of precaution, for the safety of the goods, and the security of the proprietors, must surely be within the compass of the powers of Mm, to whom the possession of the goods is entrusted for those *110 purposes. It is for the benefit of the consignor that the goods should be kept under insurance ; and the general rule is, that the factor jjas a right to exercise his discretion for the benefit of the consignor. ■
. . j?aley observes, that one of the most important duties which the safety of merchandise requires of factors and consignees, who act as factors and consignees, is that of protecting it by insurance. It may be said that the factor is not bound to insure. But the question is not upon the obligation of the factor, but upon his right; and how far he has such a special property in the goods and interest in their safety, as to give him an insurable interest in them, in his own name, to the extent of their value.
It is not denied that a factor has a special property in the goods held by him on consignment for sale, and may maintain trover for them, if wrongfully withheld from him. And that species of ownership is vested in him, I apprehend, by the consignment itself, notwithstanding that there should not be any bill of lading, or other formal transfer in writing to vest the legal title in him. And it would be strange, that an interest, which authorises an action for the goods as his own, should not be capable of being insured, or that the duty of guarding the property from danger, should not give the corresponding right to insure it.
But again. It does not always require, either the legal title, or beneficial interest in the property, to entitle a party otherwise connected with it, to effect a valid insurance upon it. A carrier may insure the goods he contracts to convey; yet hé has neither the legal title, nor the beneficial interest in them, but he is responsible for their loss. His insurance is upon the goods; yet his indemnity is against the consequences of his implied guaranty for their safe carriage, and not against the loss or deterioration of the property by the perils insured against. So in the case of Oliver v. Green, [3 Mass. R. 133.] a part owner of a ship chartered the residue of her, with an agreement to pay a specific sum if she should be lost, and insured the whole ship as his own property, without stating the nature of his interest; and he recovered for the whole value of her, notwithstanding that the objection of short interest was taken. And in the case of Bartlett & Goodwin v. *111 Walter, [13 Mass. R. 267.] the charterer of a vessel who agreed to insure her, was held to have an insurable interest; and he recovered the actual value, on a count averring interest in himself.
These maybe said not to be apposite examples, as the charterer is deemed the owner of the ship for the voyage. But his title, at best, is but temporary, and terminates with the voyage. He has the use of the ship for the time the charter party has to run; but he has not the right of property. The legal ownership continues in him who lets her to hire, and the insurable interest of the charterer, m the cases I cited, consisted in his exposure to damage from his engagement to protect the owner from loss, against the consequences of which engagement, he insures for his indemnity. So, again, a creditor may insure the life of his debtor, because his debt would be put in greater jeopardy by the death of the debtor. And it has been held, that a creditor may insure the goods of his debtor, destined for the payment of his debt, though consigned to another person. Yet these insurances are, in effect, for the use of the debt- or and enure to his benefit. And that objection was urged against the insurance effected by a creditor, to whom the bill of lading had been assigned ; but it was held to be untenable.
But it is objected, that a policy against loss by fire, differs from an insurance against maritime risks in this, that the assured, in n n insurance against loss by fire, must have the absolute or beneficial interest in the property insured, and that a mere insurable interest, in the mercantile sense of the term, is not sufficient. And the reason is said to be, that the policy against loss by fire, is a personal contract with the assured, to indemnify him for his loss, and not a contract to protect the property, for the benefit of the owners and parties in interest. So far as this distinction turns upon the difference in the usual forms of the two classes of policies, it may be well founded. For the marine policy is most commonly general in its terms, comprehending in its indemnity all who are interested in the subject of insurance; while the fire policy limits its protection to those who are specially named in it. But in any other sense the distinction is without solidity; for they are both personal contracts and contracts of indemnity to the assured solely. *112 Neither of them protects the property at large, for the general benefit of the owners. It is the difference in the terms of the different contracts, that creates the difference in the nature and extent of the insurance : and I am not prepared to say, that the policy against the risk of fire, is not capable of as much latitude, as the policy against maritine risks.
Usually, and from prudential considerations, the companies who insure against fire, require the names of the assured, to be inserted in the policies, and restrict the insurance to the persons so named, and stipulate against a transfer of the policy without the consent of the insurers. So may the insurers against maritime risks: and upon such restricted policies the interest must be averred and shown to be in the persons insured in the policy, as strictly as in a policy against loss by fire. Thus in the case of Barker v. Marine Ins. Co. [2 Mason’s Rep. 369.] cited by the defendants; where an insurance was effected on goods which had been abandoned to the insurers and accepted by them, but the goods had been purchased in by the master himself, for the original owners, at a sale of them in the port of necessity and the policy was for account of the master, the original owner, or both of them: the sale to the master being held to confer no title upon him, the policy was adjudged to be inoperative, because the property, being vested in the insurers by the abandonment and the acceptance of it, prior to the insurance, the persons named in the policy had no insurable interest, upon which it could attach. So in the case of Graves & Barnewall v. The Boston Marine Ins. Co., [2 Cranch’s R. 419.] a policy on a cargo in which Graves & Barnewall were jointly interested, was held to cover the interest of Graves only, and not to insure that of his co-partner, because the name of Graves alone was inserted, and the insurance was in its terms for him only, and not for whomsoever it might concern.
It is for the same reason that the insurance against fire is restricted to the assured specially named in the policy. But the indemnity to the assured will embrace his entire interest in the subject insured; and I know of no principle, or adjudged case, which prescribes a narrower rule of insurable interdst of a policy *113 against fire, than for a policy against the perils of the sea. The subject of insurance may be such as not to admit of any other insurable interest, than the beneficial ownership; whatever interest the assured might insure against maritime risks, he may insure against fire. And, indeed, the marine policies usually, if not universally, comprehend an indemnity against loss or damage by fire, during the voyage or term for which the insurance is effected; and the only difference between a marine policy, which enumerates loss by fire as one of the risks insured against, and a fire policy insuring against loss or damage by fire, is that the one protects the property from loss by fire on board of a ship, and the other from fire in a warehouse. The policy in each case, in its principle, without any special agreement engrafted upon it, is a contract of indemnity, and the assured must show an insurable interest, and a loss to himself, to entitle him to recover.
If, then, these plaintiffs had an insurable interest in the goods they held on commission, this policy covered that interest. The case of Lynch v. Dalzell, [2 Mar. on In. 801. reported in 3 Br Parl. Ca. 49.] does not militate against this construction of the policy. In' that case, one Ireland, the lessee of a tenement, obtained a policy from the Sun Fire Office, in the usual form, for the insurance of his house, with his goods therein, from loss and damage by fire. The assured died, and the policy was continued by his son, an executor, in the usual form up to Christmas, 1727. In August of that year, the house was destroyed by fire, and the loss was claimed by the plaintiffs, as purchasers of the house, and assignees of the policy. No assent had been given by the assurers to the assignment; and it appeared, that the policy, by the terms of the contract, was not assignable without leave; and it further appeared, that the purchase of the claimant was anterior to the fire ; but that the agreement for the assignment of the policy, was not made till after the agreement for the purchase of the term in the house, and that the assignment of it, though bearing date before, was. not made till soine time after the fire. And it was held, that, these policies are not insurances of the specific things mentioned to be insured, and do *114 not attach on the realty, or go with the same, as incident there-' ° to, but are special agreements with the'.' persons insured, against BUC^ ioss or damage as they may sustain, and that the party insured must have a property at the time of the loss, or he can sustain no loss, and consequently can be entitled to no satisfaction. And the points upon which the decision turned were, first, that the policy to Ireland, the assured, limited the satisfaction, in case of loss, to such loss as should be sustained by Ireland alone, which right had been transferred to his executor ; second, that there was no assent of the office to the assignment of the policy to the plaintiff; and third, that the assignment had not been agreed for, till the insured had determined his interest in the policy, by parting with the property, and had not been executed, till after the loss had actually happened. That decision, therefore, has no application; nor do the properties, ascribed by the court in that case, to policies against the risk of fire, materially vary from the principles of a marine insurance. The latter is, equally with the former, a personal contract with the assured, and the interest it protects," must” equally continue to the time of the loss. Neither of them is in its own nature assignable; but the interest of the assured in each,"where the terms of the contracts are the same, is equally transferrable by one to another. And the difference, in this respect, which usually prevails between them, results from the terms of the contents, variances in the terms of the policies, and from the stipulations in the policy against fire, and not from the diversity of the contracts in their principles.
But it was urged against¡the insurable interest of a consignee, that a supercargo, who has charge of the cargo for sale, is held to have no right to insure: and if maritime risks are intended, the reasoh is obvious. The supercargo, as such, has no possession of the goods, or power over them, during the voyage. His trust is, to sell in the foreign market, and his duty commences oji the arival of the ship. The right, or power to insure, is not within the scope of his authority, and does not result from any necessity. He may indeed be vested with special powers, and lfe would in such cases acquire the correspondent right. But *115 suppose the goods to be landed, and the instructions of the supercargo, to require, or authorise him, in given events, or at his discretion, to wait for a market; and in the exercise of those powers, it became necessary to warehouse the goods ; would not the right to insure them against fire, if deemed advisable, result, by necessary implication, from the power to retain the goods in store, and the consequent hazard to which they may be exposed 1 Unless the power to insure, should be held to vest in. him, the goods must remain, until the sale of them, at the risk of the owner, and that power must, therefore, in such an emergency, of necessity result to him.
But again. Suppose the goods to be consigned to the supercargo, and the bills, of lading to be delivered him, could a serious question be made of his right to insure against fire, or even against maritime risks 1 In the case of Buck & Hedrick v. The Chesapeake Ins. Co. [1 Peters’ S. C. Rep. 151.] the master, to whom the goods were consigned, •• was held to have an insurable interest in them. It is said, the point of this case was, that the goods were vested in him, and that they were documented as his. Let it be conceded, that such was the ground of the decision : the supercargo still had no beneficial interest in the cargo, but was, essentially, a mere consignee clothed by the consignment, with the power to sell the goods, for the account and risk of the consignor. And if the fact of the consignment confers the right, may not every consignee of goods, for sale, claim the same title, by virtue of his consignment 1 The consignment is, most generally, accompanied by the delivery of the bills of lading to the consignee ; and where no bill of lading accompanies the goods, the delivery of them, with written or verbal authority to sell, must be tantamount. In each case, the consignee is virtually a trustee for the sale of the goods, and has, to all substantial purposes, the same special property in them, that vested in the master, by the consignment, in the case of Buck v. The Chesapeake Ins. Company.
That case must be admitted to establish the principle, that a consignee, who holds the bill of lading and invoices of the goods, *116 in Ms own name, has an insurable interest in them. And yet he has no higher title to the goods than other consignees ; for pjg p0Wers are revocable, and his interest defeasible, by the principal, at pleasure : and other consignees have a title equally se~ , ,, . , • „ , , , cure, and an interest equally absolute, as against all the world, except the consignor ; and their special property can be divested by no other person. The sole difference is, that the one is possessed of written evidence of his title ; the other may hold under a verbal transfer.
The fair result of these authorities, and the just consequence of the special property of the factor, in the goods held by him for sale on commission, is, that he has an insurable interest in them, to the full extent of their value, and may insure them in his own name, and recover the amount payable for the loss, on an averment of interest in himself. As between the factor who effects the insurance and recovers for the loss, and the consignor to whom the goods belong, a trust may result from the operation, and the consignee be held accountable to the principal for the avails of the insurance he effects, on the principles whch would have applied to the proceeds of the sale, however exclusive the contract of insurance in its terms may be, in favour of the factor, as absolute owner. But this is an accountability with which the Underwriter has no concern. The test of his liability is the insurable interest of the assured. And the rule of interest, which I incline to apply to the factor, while it violates no principle of law, essentially subserves the purposes of commerce, and the general interest of the community, without trenching upon the rights of the insurers, or involving them in any extra-hazardous risk. The operations of the commission merchant, necessarily require, that he should have the goods of those who employ him, in the same warehouses,' and so commingled, as to form one common stock, ostensibly, of the same ownership, and exposed to the same risks, and partaking of the superintendence, safeguard and care of the same agents. The consignee, or commission merchant, h'as the possession, management and disposition of the whole. Purchasers derive their title solely from him ; he has the power to sell the goods to his own creditor, in satisfaction of his own *117 debt; and trespassers and wrongdoers who interfere with the property are amenable to him for the consequences. He is, in effect, the trustee, as well for the charge and management of the consignment, as for the sale of the goods, and the receipt of the price, and his principals are the beneficial owners, to whom he is accountable for the net proceeds; and he must, for the judicious exercise of his trust, have the power to protect the goods, while unsold, by insurance. Why, then, should be be required to sever his insurance upon the property, or to open distinct policies upon the goods of each consignor, or to specify therein, several consignments ? No one valuable purpose is to be answered by the separation ; for the risk on each is the same, and the whole is under the direction of the same agency. The convenience of all parties is consulted by covering the whole with one insurance, in the name of the consignee who has the actual possession and charge of the whole, and the same special property in all.
But again: the nature of the factor’s employment, renders an insurance by him in any other form, not only inconvenient, but impracticable; or extremely difficult in practice. He holds himself out to the world as a commission merchant, and solicits the consignment of all who may have goods for sale. The purpose of the consignments is the sale of the goods, and the merchandise of different employers, passes in succession under his operations and agency. The goods of A., which occupy a place in his warehouse, at the present moment, maybe sold before the close of the day, and the goods of B. take their place to-morrow; and in the course of thirty days, as many different lots of merchandise may have had the shelter of his warehouse, and been exposed for different periods of time, to the risk of loss or damage by fire therein.
How is these factor to protect these different interests by insurance ? If he is bound to specify each, he must either open a separate policy on each, or cause a specification of each to be endorsed on a general policy covering the goods of whomsoever it may concern : either of which methods would be attended, in an extensive establishment, with insuperable difficulties and neither of them fully accomplish the object.
*118 These considerations may have led to the form of insurance in use, by a general policy, like the present, in the name of commjss[on merchant, on all goods that may be in his warehouse, at any time within a given period, to a specfied amount, whether held by him as owner, or in trust, or on commission. Suth a contract meets the exigencies of the case; for under it the insurers will be answerable for loss or damage by fire, within the terms of the insurance, to whatever merchandise or property may happen to be in the warehouse at the time of the fire, and be then held by the assured, as general or special owner, without regard to the time of his receipt of the goods in store, or the persons who may be interested in them.
The policy effected by the insured in this case, was manifestly intended for such á contract, to which it seems to us, fitly adapted. It insures the plaintiffs for one year upon all goods, wares and merchandise, in the warehouse which it describes, which shall belong to them, or be held by them in trust, or on commission, to the amount of $10,000 : and it is admitted, that the insurable interest of the assured in their own goods, and the goods of their principals, which were in the warehouse at the time of the fire, was covered by the policy. And if the plaintiffs, as consignees, had an insurable interest in the goods held by them on commission, to the extent of the value of the consignments, they were undeniably protected by the policy, and a more particular specification of the interest of the consignees, if otherwise necessary, was dispensed with by the parties to the contract.
But it is asked, with apparent confidence, why, if the consignee of goods, with a general power of sale, has authority as such, to effect insurance, orders to insure are ever given by the consignor 1 or why is it, that express or implied instructions to insure, must be shown, to charge the factor with loss, in case of his neglect to effect insurance 1
The defendants themselves have given an answer to the objection. They predicate of the factor, that he is not bound to insure; and the authority of Chitty is adduced in support of the Position. Paley agrees with Chitty ; and such seems to be the *119 settled rule. The factor has an insurable interest, which gives him the right, but does not impose upon him the obligation, to keep the property under insurance. He is to exercise his own judgment, and to insure or not, according to his discretion. He may be dissatisfied with the terms of insurance. He may have stored the goods, in a fire-proof store of such location, as to be, in his judgment, sufficiently secure from fire; or he may have contracted for the sale of them, and be about to deliver them to the purchaser. In all these cases, the extreme caution of some factors, may still induce them to insure ; while the confidence of others, may lead them to trust the goods without insurance. And both classes, if they act in good faith, will be saved harmless; the one being entitled to the reimbursement of the premium, the other exempted from the loss. The consignor, if he desires his property to be insured, at all events, and is not willing to trust to the judgment of his factor on the expediency of the insurance, must give an express order; or must be entitled from the special circumstances, to have the property insured by the factor, or he cannot look to him for the consequences of neglecting to insure if.
But there is another answer to the objection equally conclusive. The orders to insure, to which the books refer, are orders for insurance against marine risks, usually the risks attending the transportation of the goods from the place of shipment, commonly the residence of the consignor, and the place of destination, generally the residence of the consignee. It is to that species of insurance, that Phillips refers, [chap. xxii. p. 519.] when, adverting to the principle that a consignee of goods has authority to insure them, so distinctly advanced in the case of Lucena v. Craufurd, he subjoins the comment, that this will depend upon the particular circumstances, for that it can hardly be supposed, that the mere fact of consigning goods to a foreign merchant, without any orders as to insurance, would of itself be a sufficient authority upon which to effect insurance, and charge the consignor with the premium. Without yielding to the justice of the comment, or examining how far the reason he opposes to the generality of the rule may require its restriction to cases *120 specially circumstanced, I observe that there is a wide differ-between the insurance of goods against maritime risks on tpe voyage of exportation, and the protection of them by insurance w^ile in store, against fire. In the first place, the consignee has not the full possession of them, and is not invested with all his powers over them, until the arrival and delivery of them to him. But without laying stress upon that circumstance, I observe, in the next place, that the great reason why the consignee for sale does not insure, and is not expected to insure against maritime risks on the voyage of importation without an order for the purpose, is, that the consignor, in such cases effects the insurance himself, and he does so, for the most cogent reasons. He is on the spot, capable of determining for himself whether he will insure or not; and if he prefers insuring, can select his, own underwriter, and be sure of having the property satisfactorily covered. If he trusts to his foreign correspondent he maybe disappointed; his orders may miscarry, or not arrive in season, or his consignee may fail, and besides, in case of loss, the insurance if made by liim at home will be the more readily and more easily realized, and with greater advantage to himself, than if to be collected by agents abroad, and remitted by them to him. He therefore will seldom trust a concern so interesting in its consequences to his factor abroad, when he can attend to it himself at home. And hence it is, that orders to insure are not usually given to consignees, unless they are required to make advances on the goods in anticipation, and the insurance is to be for their own protection and security. The consignee, therefore, would not, ordinarily, insure against the maritime risk of the voyage, without the orders of the consignor, or some reason to induce the act. But if he should, upon the receipt of the bills of lading, effect insurance bom fide, and for just cause, upon the goods consigned to him, for the voyage of importation, I am not prepared to say, that the contract would be void, or that the charge of the premium could be rejected by the consignor. But the objection to A maritime insurance, on the goods, on the voyage, does not apply to the insurance against fire, durin g their continuance in the warehouse of the factor, waiting for buyers. That insurance *121 devolves immediately, and almost of necessity, upon the factor. He has the exclusive possession and charge of the goods. He interested in the safety and profitable sale of them; has the means of reimbursing himself the premium, and possesses all the knowledge of the place of deposit, which is required to effect a valid insurance upon them. But the consignor, from his distance, and his want of local knowledge, will be unable to judge of the necessity of insurance, or the nature of the risk, or to describe the building, in which the goods may be stored, with sufficient certainty for a binding contract.
These considerations satisfy me, that in principle the consignee, who has the actual possession of the property, with plenary powers of sale, must be clothed with a special property in the goods, so as to enable him to effect a valid insurance upon them in his own name, and to entitle him to recover for the loss of them, upon an averment of interest in himself. I have found no adjudged case necessarily impugning that conclusion ; and the current of judicial opinion is in favour of the principle. But again ; if it should be conceded, that the consignee has not the right to insure the goods of his principal under other circumstances, or against other risks, he must, I think, from necessity, be vested with the power to insure against loss or damage by fire, in his own warehouse, for the safety of the goods while they remain in his hands for want of buyers. And if his special property does not (though I think it does) give him the right to insure, as upon an insurable interest in himself, beyond his own beneficial interest, or subsisting liens, he must still have the special power at his discretion, and without any specific instructions to effect insurance on the surplus interest for the benefit of his consignor. And in this point of view, the usage found by the jury might have an important bearing upon the rights of the parties. For, if such insurances are sanctioned by usage, those who send their goods to a market where the custom prevails, must be presumed to know its custom, and to act upon the knowledge of it, in regulating their consignments. And these defendants, who knew the plaintiffs as commission merchants, and were apprised by the declaration of the policy, that the insurance was *122 to be upon goods held on commission, must be taken to have entered into the contract with reference to the usage, and must abide its influence on their liability. The general prevalence of suc^ a custom might account for the absence of orders to insure : the consignees choosing to trust to the judgment and discretion of the factors residing on the spot, and possessing a full view of the whole ground, as to the expediency of insurance against fire, rat her than to bind them down by express orders to the duty of insuring at all events. It would be difficult to account for the indifference and inattention of the consignor’s interests, which the neglect to give the orders would otherwise manifest, upon any other supposition than that of a settled conviction on their part, resulting from past experience, or the advice of counsel, of the right of the consignee to insure, and a confidence in the judicious exercise by them of the power, or that of a reliance upon the conformity of the. consignee to an established usage for the factor to keep the goods sent to him for sale, under insurance, until sold.
But it is contended, that such an insurance would be for the indemnity of the owner of the goods; and to be sustainable as ail insurance for his benefit, and on an implied authority from him ; the policy must he in his own name, or the terms of it must be sufficiently comprehensive to embrace him, and cover his interest ; and that the loss, moreover, which may happen, must be recovered on an averment of interest in him. These may be requisites of an insurance effected by an agent, insuring by the order, and on the account of his principal solely,, or by a naked consignee, who has the possession merely without the power to dispose of the subject he insures ; and they are rules which apply also to policies expressly declared to be for the benefit of the principal, and not professing to be upon any interest of the agent or factor, who effects them. But can they be applicable to this contract 1 It surely could not be necessary to the validity .of this insurance, that these factors should insert the names of their principals in the policy. Such a requisition could subserve no valuable purpose, and would be embarrassing in the extreme, and often times impracticable. An insurance, like the present, is for t-he protection and indemnity of the commission merchant, *123 against loss or damage to any goods or merchandise, that may chance to be in his warehouse, at the time of the fire, and may then belong to him, or be held by him for sale on commission, as the factor of others. And it cannot be foreknown whose goods will be there at that time. The insurers, therefore, admitting them to be entitled to notice of the names of individuals intended to be benefited by the policy in ordinary cases, have dispensed with it in this case, by becoming parties to a contract which necessarily precludes the disclosure. But there was no difficulty in stating the insurance to be for the benefit of whomsoever it might concern. If the contract could he viewed simply in the light of an insurance for the use of the plaintiffs and others, for whom they acted as agents, some general expression might be requisite to extend its protection to the assured, who were not specifically named in the policy. But this is an insurance by factors, upon goods held by them on consignment for sale ; and even if the law did require, as a general rule, that such insurances should be for the account of the principals, and that to render the contract available to them, the factor must adapt hie policy to the form prescribed for other agents, this contract appears to me to dispense with that condition; or, rather, to require a substitute for it, which probably was supposed to be of greater value to the insurer. By the third article of the conditions subjoined to the policy, and made part of it, goods held in trust, or on commission, are to be declared and insured as such, otherwise the policy will not cover such property. Can the sense of this provision be misunderstood 1 Does it not import, that if the condition be complied with, by the disclosure to the insurers, that goods held on commission are to be the subject of the insurance applied for, the property shall be covered by the policy 1 And if such be the true construction of the clause, it amounts to an agreement, that all the goods in which the assured should be found to have either an absolute interest as owners, or a qualified property as factors, should be covered by the policy, and the satisfaction, in case of loss, be made to the assured,, as representing the entire interest in them.
*124 It was certainly competent to the parties to enter into such an arrangement, and the contract would not be objectionable, as a wager or gambling policy; for goods equal in value to the amount claimed for the joss must be at risk, and no more would be recoverable than the actual loss or damage which those goods might sustain by fire. And the assured, if vested with a special property in the goods, would, on the principles applicable to trustees and agents receiving money for the use of the principal, be accountable for the surplus of the avails beyond their own reimbursement, to those whose interest they represent. Taking this article of the conditions, then, in connection with the description of the goods in the body of the policy, as being held on commission, and understanding the contract, with that feature in it, as I do, there could be no necessity for superadding any general words, to embrace the interest intended to be protected by the insurance. The defendants, according to the terms of the contract, insured the plaintiffs against loss .or damage by fire, to the amount of $ 10,000 on goods and merchandise, as well the property of the assured, as held by them in trust, or on commission, in a specified warehouse, and promised and agreed to make good to them all such loss or damage, not to exceed the sum insured, as should happen to the property thus designated, during the continuance of the risk. The insurancé was for the plaintiffs, on property held by them on commission, which might be in their store at the time of the loss; and the promise is to make good to them all. such loss or damage, as should happen by fire to that property. It was the loss or damage to the goods under consignment, by fire, that was to be made good; and that loss or damage was to be estimated according to the true and actual value of the property, at the time the loss should happen. Would the reimbursement of the advances of the consignee, and the payment of the commission he would-have earned by the sale of the goods, satisfy the terms of such an agreement 1 It surely would not be making good to the assured the loss to the property by the fire. If the insurance upon the goods held on commission -had been intended to be confined to the advances and commissions of the factors, who effected it, other terms would most *125 probably have been used to describe the intérest. It would have better comported with the character of such a contract to have declared it to be an insurance on the advances and commissions of the consignees, or their own property in the goods, and the promise would have been to pay the loss or damage to the extent of that interest. The terms employed by the parties to this policy more aptly embrace the entire property in the goods, as the subject of the insurance, than the partial interest to which the limited construction now sought to be put upon the contract would restrict them. But again ; if the intention was to effect a partial insurance on the goods held by the assured on commission, and to cover the advances and commissions only of the consignees, and the policy in its usual form, without any special clause or declaration, was supposed to have that operation, to what end were the declaration and disclosure required, which the third article of the conditions calls for 1 The requisition is said to be intended for the benefit of the underwriters, and was of such importance to them, that its observance was made the condition on which the policy was to attach. What purpose, then, was it to subserve 1 It could not be designed to limit the risk to an interest to which they understood the policy itself, by its own character, to restrict it; and it could be of no use to them in making the estimate of the rate of premium. For upon the construction the defendants contend for, the consignee alone would be insured, and his insurable interest would be precisely the same, whether his policy was upon goods generally, or upon goods declared, and insured, as goods held by him on commission; and the declaration, of course, could have no influence on the rate of the premium. The mere commission on the salé was too small a risk to create a solicitude on the part of the underwriter as to the vigilance of the factor in the safeguard of the goods ; and if his advances were to a sufficient amount to interest him in their preservation on his own account, the insurers would have the same pledge for his special care and attention that his absolute ownership would give him. Are we not justified in the conclusion then, that these parties, if they did understand a general policy for a factor not to embrace the entire value of the goods *126 held by him on commission, must have intended by the specification introduced into this policy to extend its protection to that interest. It was desirable to the plaintiffs to keep the goods of their principals in their warehouse under insurance, and the defendant could have no reasonable objection to the risk.
In framing the contract on that principle, the leading object would be to select some apt and comprehensive form of description to designate the interest intended to be covered, and to limit the risk to property of that description. And these features appear in this contract. It is a policy prepared in reference to that class of risks, and has an article in the conditions which accompany it contemplating the insurance of goods held on commission, and requiring them to be declared and insured as such; and the contract conforms to the condition, being in terms an insurance upon goods and merchandise, as well the property of the assured, as held by them in trust or on commission. These terms of insurance, especially when taken in connexion with the explanatory condition, may surely be held to import an agreement, that the goods held by the assured on consignment for sale, might be the subject of insurance, and that the entire value of them, when declared and insured as such, should be covered by the policy; and the assured be entitled, in case of loss, to the same measure of satisfaction, as if they were his own absolute property. And if that conclusion be correct, these plaintiffs would, on that ground, even if other grounds should fail them, be entitled to recover.
But I view this feature of the policy in a light yet more favourable to the assured’s claim. I regard it as an implied admission, by the defendants, of an insurable interest of factors in the goods they hold on commission; and that a policy by the plaintiffs, in their own names, on goods generally, would attach upon the consignments in their hands for sale, and cover the entire interest in them. Hence the declaration in question was supposed to be necessary, and was required and made a condition of the insurance; not for the purpose of limiting the operation of the policy, but for the purpose of possessing the insurers of facts deemed material to a judicious estimate of the risk; and the civ» *127 eun'istauce, that the consignee is coupled in the condition with ' ° 1 the trustee, tends to confirm this exposition of the policy. A trustee is acknowledged to have an insurable interest in the trust property; his declaration and insurance of the goods, as trust property, could neither invest him with any new interest in it, nor divest him of that which he had before. And the disclosure of the trust called for by the condition must have been required, on account of its supposed bearing upon the application for insurance, or the rate of premium. And when the consignee is placed on the same footing with the trustee, and the same declaration and disclosure of the nature of his ownership is required of him, it seems to follow, that his special property in the goods he holds on commission, must have been understood to be equally an insurable interest with that of the property of the trustee in goods held by him in trust, and that the information required of each was for the same purpose. The object of the requisition could not be the discovery of the consignees of the goods, as their names were not required to be disclosed, and as the disclosure was unimportant. The declaration and insurance by the trustee or the factor of the goods, he holds as goods held in trust or on commission, must have been required on the ground, that the legal title of the trustee and the special property of the factor, though conferring upon each an insurable interest to the value of the goods, yet did not authorize a calculation upon that active zeal and watchful vigilance in the safeguard of the goods, which an absolute ownership would probably ensure ; and that a higher rate of premium would be required for insuring goods for the special, than for the general owner. But the insurers, it is said, look to the character of the assured for integrity and prudence, and not his interest in the subject, as the ingredient in the risk. And it is suggested, that the object of the underwriters, in restricting the indemnity to those who are named in the policy, was to compel a disclosure of the persons whose interests were to be covered by the insurance, so as to enable them to judge of a risk, into which the character of the assured for integrity and for discretion and vigilance, so materially enters; a nd the inference is said to be, that thcSe defendants can *128 not be presumed, in the face of this settled and uniform rule and course of proceeding, to have agreed to extend this policy beyond ¡_he interest of the plaintiffs themselves, to property belonging to other persons not named in the contract. But this contract does not, in terms, restrict the insurance to the assured specially named in the policy ; and the information called for by the third article of the conditions, as we understand the agreement of the parties dispenses with that disclosure. That article simply requires, that goods held in trust or on commission should be declared and insured as such. The names of the cestuy que trust, or of the consignors, are not required to be disclosed; and we see in the example before us, that a simple declaration and insurance of merchandize, as goods held in trust and on commission, without the disclosure of the parties beneficially interested, were admitted to be sufficient to satisfy the condition, and give validity to the insurance. That the moral character of the assured, who may have powerful temptations to benefit himself by the fraudulent loss of the property, and his habits of care and vigilance, or of inattention and negligence, enter materially into the risk, cannot be denied: and it was upon this consideration principally, it is true, that the regulation was introduced, which restricts the insurance to the assured named in the policy and forbids the transfer of it to others. These reasons, however, refer to insurances on property in the immediate possession and charge of the assured, or to which they have free access. No such motives could actuate the insurer in estimating the risk he takes when he insures the goods of the consignor in the possession, and under the exclusive control, of the consignee. The disclosure of the fact of these goods being held by the assured on commission was notice to these defendants, that the goods were not to be in the charge or custody, or under the care of the owner of them, but of his agent and factor, during the continuance of the risk : and the defendants would look, therefore, to the character of factor, and not to that of the owner, for integrity, discretion and vigilance, and the claim he has on that ground to a disclosure of the names of the assured, was fully satisfied, by giving him the names of the factors.
*129 Upon the whole, the result of my reflections upon the case, in all its aspects, is in favour of the plaintiffs’ right to recover the loss and damage to the goods he held on consignment for sale, upon the entire value of the goods, and that judgment must accordingly be entered upon the verdict.
Oakley, J., after stating the facts of the case.
The first question, which presents itself, is, whether the Judge-properly admitted the evidence, as to the alleged usage of commission merchants, in the insurance of the property of then’ consignors. The counsel of the defendants, on the argument, did not discuss this point; and, indeed, there seems to be no ground, on which the propriety of the admission of that evidence can be questioned. To ascertain the rights of the consignees, as to the insurance of the goods in question, it was clearly competent for them to show the course of trade in which they had been engaged, and that the insurance of the property in their hands, was a part of their regular and customary business as factors, although no express orders to that effect were given by the consignors.The defendants were bound to know this usage, and must be understood to contract in relation to it. [Phil. on Ins. 16, 17.] But it is not necessary to consider this point more particularly; as in the view I have taken of the case, the usage found by the jury has no material bearing on its merits.
The important question to be decided, is, whether the plaintiffs can recover on these policies, beyond the value of their own property, and the amount of their advances and liens upon the property held by them on commission. Their right of recovery to that extent is conceded by the defendants.
A policy of insurance, like all other written contracts, is to be construed, according to the plain, ordinary and popular sense of the terms used in it; unless, by the usage of trade, such terms have acquired a peculiar sense or meaning. [Robertson v. French, 4 East, 135.] Considering the policies in this case, according to this rule, it seems to be clear, that the parties intended that they should cover the goods held by the plaintiffs on commission, to the same extent, as those which were their absolute property. The *130 language of the instrument is sufficiently explicit : The defendants agree to insure “ goods, as well the property of the assured, as those held by them on commission.” Nothing is said, in terms, of the interest of the plaintiffs, in goods held by them on commission. Although the plaintiffs, in compliance with the third condition annexed to the policies, apprized the defendants, that they wished insurance upon other goods than those in which they had the absolute property, the defendants did not think proper to limit or qualify the terms of the contract. Indeed, it is fairly to be inferred, from the terms of that condition, that the defendants understood, that insurance on goods generally, as the property of the assured, would, independently of the condition, cover goods held in trust, or on commission. And what seems to remove all doubt, as to the actual intent of the parties, is the rule, by which the amount of damage, to the property, insured, is to be estimated. It is, by the express terms of the policies, tobe “according to the true and actual value” of the property at the time the loss may happen. This rule is applied alike to all the kinds of property enumerated in the policies. As to goods, the absolute property of the assured, no other rule could have been adopted. And the application of that rule, to goods held on commission, marks, very clearly, the understanding of the parties, that no distinction was to be made, as to the character of the interest of the plaintiffs in the different kinds of property insured. The whole tenor of the policies shows, that all goods covered by them were considered, to the same extent, and for all the purposes of the insurance, as the property of the assured.
Such being the contract actually made between the parties, the question arises, whether a factor or commission merchant, having property consigned to him for sale, and in his actual possession, has any general interest in it, which will enable him to make a valid contract of insurance in his own name ; cover'ng the whole value of the property without regard to the extent of his lien. This is a question of very great importance to the commerce of this city. The practice of insurance against fire, on the property of the foreign merchant, in the hands of Ms consignee, greatly tends to promote the interests of trade : and it. ough.tto be upheld by any means not inconsistent with es *131 tablislied rales of law. The well known and usual mode, among • commission merchants, of covering the property of their principals, is by a general insurance upon time, like that in the case now before us. A policy, thus made, cannot be considered as attaching specifically and solely, on the goods in the hands of the factor, at the date of the policy. It is well understood by the parties to all such contracts, that the property of consignors is constantly changing, in the hands of the consignee; and that it will and must often happen, that no part of the specific goods, originally covered by the policy, is exposed to loss, when any fire may take place. Indeed, it does not appear, how insurance against fire, on property in the possession of a factor, which may be sold at any moment, can be effected on each consignment of goods, rvithout subjecting the owner to great inconvenience. A sale of the goods insured would, at any time, put an end to the policy. Such a mode of insurance would give to the insurers an unreasonable advantage; as a premium would, almost always, be taken for a period greater than that of the risk actually incurred. And although a return of premium, in such cases, might be specially stipulated for in the policy; yet, it is apparent, that the necessity of multiplying these special stipulations, and of the frequent insurances, Avhich must be resorted to by the factor, would greatly embarrass the course of his business. The mode in use, Avhile it gives every facility to the commission merchant, subjects the insurer to no disadvantage. It would be a matter of much regret, if this mode, so beneficial to the general interests of trade, should be found to be unsupported by latv.
The consideration of. the question notv before us, leads to a vieAV of the rights and potvers of a factor over property in his possession, for the general purposes of sale. These rights and powers grow out of the relations existing betAveen him and his principal, and between him and third persons or strangers. As it relates to his principal, he has no power to deal with the property consigned to him, otherwise than according to his instructions. He has a right to retain it, or its proceeds, for payment of all commissions and charges, and for the reimbursement of all advances. As between principal and factor then, the interest *132 of the latter in the property may justly be said to extend no farther than his lien. But as between the factor and third persons, p0Wers an¿ rights are of a very different character. And it ma^ a^hmed, that in all questions relating to the property in his hands, arising between him and them, he is, without the positive interference of his principal, considered by the law, as the owner. As it respects the public, he is treated as such: for if a felony be committed of the goods, the indictment may aver the property to be in him. So in case of trover or trespass, he may maintain his action as owner of the goods. 2 Saund. 47. b. note.] And in such cases the damage is laid in the delaration to be his. So, he has the absolute power of selling the goods ; and may give discharges to the purchaser; although he sell to his own creditor, for the purpose of satisfying his own debt [Cowp. 256. 1 Com. on Con. 243. 3 John. Ch. Rep. 573. 5 do. 429.] And it is the constant practice upon such sales, for the factor to sue for and recover the price of the goods, in his own. name. So an auctioneer may maintain an action in his own name for goods sold and delivered; though he sells them at the house of his employer, and the goods are known by all parties to belong to him. [ Williams v. Millington, 1 H. B. 81. Hulse v. Young, 16 John. R. 2.] And it was so held, on the ground that the auctioneer had the possession of the property, coupled with an interest. And Lord Loughborough in Williams v. Millington, likens the case of an auctioneer to that of a factor, in point of principle. So, if the factor should entrust the goods to a common carrier, and they should be lost, under circumstances rendering the carrier liable; it cannot be doubted, that he might maintain an action in his own name, for the full value of the goods. In these cases, the purchaser or carrier, would, never be permitted to inquire into the relations subsisting between the factor and his principal, or to limit the extent of their liability by reference to the amount or extent of the factor’s lien on the goods.
It would seem to follow, from this view of the powersand rights of general factors or commission merchants, that for all purposes connected with the custody and disposition of the property, the law considers them as owners; and that they may enter into *133 any contract with third persons in relation to the goods in their hands, which becomes necessary or expedient in the execution of their general powers: and that they may maintain actions in their own names, for the breach of any such contract, and aver loss and damage to themselves to the value of the property.
The contract of insurance, by a factor, against fire, seems to me to fall clearly within this general principal. It is a contract for the preservation and safe keeping of the property, until it can be sold. It is made in the regular course, and according to the custom and usuage of his business; and is expedient, if not necessary, for the prudent and judicious execution of his general powers as factor.
I am unable to perceive any ground, in principle or good sense, why this contract ought not to be viewed in the same light with the contract of sale : and why the factor may not in the one case, as much as in the other, be considered as the owner of the property, for the purpose of entering into the contract, or of recovering damages for the breach of it.
The effect of a sale of goods, by a general factor, although he acts against his secret instructions is founded on the custom of merchants, and in the safety and convenience of commerce.
It is equally important that such a contract of insurance, as the present, should be supported on the same grounds. I cannot find, that the conclusion I have arrived at—that a general factor, having possession of the goods, is to be considered in law, as having an insurable interest, in the whole amount, without reference to his lien, is any where opposed by authoriyt. The counsel of the defendants, at the bar, cited no adjudged case restricting necessarily, the insurable interest of a factor, or consignee, to the extent of his lien, on the property ; and none has fallen under my observation.
It is laid down generally in Phillips on Insurance, [44.] that the insurable interest of a consignee, or factor, is limited to the extent of his lien. That writer gives no authority for his position ; and he lays it down without any .discrimination between Marine and Fire Insurance. It might be well contended, (if it were necessary) that a more liberal rule ought to be adopted, as to the extent of the insurable interest of a factor, in the case. *134 of insurance against five, than in the case of a marine insurance. convenience of trade would seem to point out and sanction a c]jfjgrencej ;n the application of the rule to the two kinds of jnsurance.
In several cases, the rights and interests of consignees or factors, in effecting marine insurance, have been incidentally alluded to by the courts. Thus in Lucena v. Craufurd, [3 Bos. & Pull. 95.] the Judges say, “ It is not necessary, that the assured should “ have a beneficial interest in the property insured. It is suffi- “ cient if he be clothed with the character of a trustee, an agent, “or consignee.” And again, [p. 98.] they observe, that “many “ consignees receive goods, with orders to attend to the directions “ of the consignors asto their disposal; and yet they are not theless “ able to insure. So every trustee is subject to the directions either “ of cestuy que trmt, or the Court of Chancery.” In the same case, in the House of Lords. [5 Bos. & Pull. 289.] Lord Eldon says, “ a trustee has a legal interest in the thing and may there- “ fore insure. So, a consignee has the power of selling.” In Craufurd v. Hunter, [8 T. R. 13.] which involved the consideration of the same policy, Lord Kenyon says, there is no doubt, that a trustee or consignee may insure : and Grose J. remarks, that if the plaintiffs in that case, were “ either trustees or consignees,” it seems admitted that they might insure.
It is manifest, that the judges in these cases considered a trustee and consignee as standing on the same ground, and having the same right to insure. And it is not questioned, that a trustee has an insurable interest in goods, as owner, to their full value, although he may not have a beneficial interest in them to any extent, and that insurance may be effected by him, on the ground of his own interest, and not as agent of the cestuy que trust.
It has ben objected at the bar, that this view of the interest of a factor, or consignee, exposes the insurer to the danger of double insurance. The same remark will apply to the case of mortgagor and mortgagee, Trustee and cestuy que trust
In 13 Mass. 67. it is said, “that a bona fide equitable inter- “ est in property, of which the legal title is in another, may be “ insured under the general name of property, or by a description *135 “ of the thing insured.” And again, that “ several persons, hav- “ ing several interests, may insure to the full value of that in“terest.”
Although there may thus be a double insurance, on the same . — . thing, and, as m the case of trustee and cestuy que trusty to its full value ; yet in case of the destruction of the thing insured, there could be but one indemnity recovered. If in a subsequent policy, there be “ no provision in respect to prior insurance, the “ amount of insurable interest for such policy will be the same as “in the first: for the assured may insure again and again the “same property against the same risks, if he will pay the “ premiums : but he can recover only one indemnity.” [Phil. on In. 326. 1 Burr. 489.]
In the policies now before us, it is stipulated, that the assured shall notify to the company, any other insurance, which they had effected, or should effect, on the property insured. The defendants have provided, as far as they deemed it expedient, against double insurance. They were apprized that other persons, than the assured, were interested in the property insured: and they might have guarded against the acts of the consignors of the “ goods held on commission,” by requiring the assured to disclose the names of such consignors, from time to time, as their consignments came under the protection of the policies.
There is another view of this case, which will also result in establishing the liability of the defendants, to the full value of the “ goods held on commission” by the plaintiffs. In marine policies, effected in the name of a particular person, where it is intended to cover the interest of other parties, it is usual to insert the clause “ for whom it may concern.” And it seems well established, that a policy containing such a clause, or other equivalent ones, will protect the interest of any person in the property insured, in whose behalf the assured has a right to act as agent.
Now, whatever doubt may be raised as to the extent of the insurable interest of a factor; it cannot be questioned, that as agent of his principal, he may effect insurance, for his benefit. The words “ goods held on commission” in these policies, are equivalent to the clause, “for whom it may concern,” usually in *136 serted in marine policies. They contain a distinct declaration to the insurers, that the assured were acting for the benefit of their consignors : and that other interests, than their own, were to be protected by the policies.
In this view of the policies, it would be necessary to consider, how far the plaintiffs could recover upon the pleadings, in this case, beyond the extent of their own absolute interest; or how far the averment of interest in themselves is supported by proof of interest in their consignors. In Bell v. Ainsley, [16 East, 141.] it is said, that since the statute 19 Geo. 2. c. 27. (which declared insurances without interest, by way of gaming; void,) “ the con- “ stant practice has been to state in whom the ’interest is, and for " whom the policy was made, and to make that statement accord- “ ing to 'real fact.” And in that case it was held, that joint owners of property, insured for their joint use, cannot recover on account, averring the interest tobe in one of them.
In Cohen vs. Hannam, [5 Taunt. 101.] the same rule, as to the averment of interest, was laid down.
If the present case was governed by the rule above referred to, it would follow, that upon the declaration, as it now stands, there could be no evidence admitted, of any interest in the goods insured, other than that of the plaintiffs. If the cause turned upon this view of the policies, it would be necessary to consider, how far the rule, as to the averment of interest above alluded to, has its origin in the English statute in restraint of gaming insurances. I prefer, however, that my opinion should rests on the broad ground, that the plaintiff had an insurable.interest in the “goods held on commission,” to their full value, without regard to their lien; and if I am correct in this, there can be no question as to the pleadings in the case.
The result of our opinion is, that there must be judgment for the plaintiffs, for the amount of the entire loss sustained on the goods.

Judgment for the plaintiffs.

[D. Lord, atty. for the plffs. W. S. Johnson, tty. for the defts.]

 Le Cras v. Hughes.