BANK OF PASSAMAQUODDY, (WILD v.) See Case No. 17,646.

BANK OF PENNSYLVANIA, (BULLET v.) See Case No. 2.125.

BANK OF PITTSBURG, (CROMWELL v.) See Case No. 3,409.

BANK OF RIVER RAISIN, (DAVIS v.) See Case No. 3,626.

---

## Case No. 898.

BANK OF SOUTH CAROLINA v. BICKNELL et al.

[1 Cliff. 85;[1] 43 Hunt, Mer. Mag. 586; (2d case;) 17 Lawy. Ed. U. S. Sup. Ct. Rep. .241.]

Circuit Court, D. Rhode Island. June Term, 1858.[2]

MARINE INSURANCE—CONSIGNEE TO SELL ON COMMISSION—AUTHORITY TO INSURE FOR PRINCIPAL.

1. Where goods are shipped to consignees, to be sold on commission, and the consignees,

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Reversed in 17 Lawy. Ed. U. S. Sup. Ct. Rep. 241.]

for their own benefit, insure their interest to an amount equal to the value of the goods, and the goods are lost, there is no privity of contract between the consignor and the insurance company on which a right of action against the company could be founded.

[Cited in The Sidney, 23 Fed. 95.]

[See note at end of case.]

2. Consignees of goods for sale on commission, being in advance to the consignors, or under acceptances for them, as in this case, may insure in their own name and on their own account to the full value of the goods, and apply the proceeds to their own benefit to the extent of their claims in respect of such advances and acceptances, and perhaps of their commissions. But though they have this insurable interest, they are not, merely in their character as such consignees, vested with any authority to effect insurance for their principal on the consignment while it is in transit.

[See Henshaw v. Mutual Safety Ins. Co., Case No. 6,387.]

[See note at end of case.]

[In equity. Bill by the Bank of South Carolina against Bicknell and Skinner and the Commercial Insurance Company on a policy of insurance. Bill dismissed. Reversed by supreme court in Bank of South Carolina v. Commercial Ins. Co., 17 Lawy. Ed. U. S. Sup. Ct. Rep. 241.]

Bill in equity praying, among other things, that the corporation complainant might be declared entitled to recover the amount of a certain policy of insurance from the corporation defendants, on a quantity of cotton, in the same manner as if the insurance had been effected in their name; that the insurance company might be ordered to pay the same accordingly; and that the other defendants might be enjoined from commencing any proceedings to collect the insurance money, except at the request and for the benefit of the complainants.

Most of the facts were either admitted by the pleadings or not made a subject of controversy.

Michael Lazarus of Charleston, South Carolina, purchased and owned forty-two bales of cotton, which he shipped from that port on the 1st of August, 1857, in the Emily Ward, to the first-named respondents, to be sold by them, as his agents, on commission. At the time of shipment he took a bill of lading from the agent of the vessel, and on the same day drew a bill of exchange on the respondents against the shipment for two thousand four hundred dollars, payable to his own order sixty days after sight, which sum was less than the value of the consignment. Immediately on drawing the bill of exchange, being otherwise unable to pay for the cotton, he indorsed the bill of exchange, presented it at the bank for payment, and, upon indorsing the bill of lading as security, obtained the money. The bill was forwarded to the drawees, and by them accepted on the 25th of the same month. On the same day the drawees insured the cotton in their own name for the sum of three thousand five

hundred dollars in an open policy then held by them, executed by the corporation defendants, which policy bore date the 9th of January, 1857, and was taken out on that day. [By the terms of the policy the first-named respondents were insured "on all merchandise shipped by or to them at and from port or ports to port or ports of destination on the Atlantic ocean, and upon the waters connected therewith, including the North sea, to continue the same until notice is given by either party in writing to cancel this policy; the insured to give notice of all shipments on receipt of information, each ten bales of cotton, in successive numbers, subject to their own average. Rates of premium as per memorandum, on file of this date, against loss or damage on the high seas and elsewhere, as mentioned in the respective indorsements, * * * and to the amounts and in the manner therein set forth." Their proposal to enter the risk is as follows: "Forty-two bales cotton on board the tern Emily Ward, at and from Charleston to New York, and while there and from thence to this port as customary value, at thirty-five hundred dollars." And on the same day the insurance company made the following indorsement: "Under this policy we entered insurance for thirty-five hundred dollars on forty-two bales of cotton on board the tern Emily Ward, at and from Charleston to Providence via New York as customary, one-half per cent. less one and one-half per cent., $17.25."]³ Both vessel and cargo were lost by the perils of the sea. Before the maturity of the bill of exchange the first-named respondents became insolvent, and refused to pay. Demand was made upon the respondents, the bill of exchange and the amount of the premium being first tendered to them. The complainant alleged that the first-named respondents had endeavored to collect the policy in order to deprive the bank of all benefit from the insurance; that the bank had the right to collect and receive the money in the same manner as it would have been entitled to stop the cotton in transitu, or as it might, if the loss had not occurred, have recovered possession of the cotton upon returning the acceptance, and paying the charges and expenses of the consignment.

It was alleged in the answer, that the contract of insurance was made solely between the first-named respondents and the insurance company, without any instructions, express or implied, from the complainants; that the premium is a charge against the insurers, and must be paid out of their estate; that the insurance was effected upon their own interest in the cotton, growing out of their acceptance of the bill of exchange; and that complainant had no interest in the contract either at law or in equity.

---

³ [From 17 Lawy. Ed. U. S. Sup. Ct. Rep. 243.]

T. A. Jenckes, for complainant.

The plaintiff, being a principal, may follow his property or the substitute, if it can be identified, into the hands of the defendants, Bicknell and Skinner, as they are agents, subject only to advance, commissions, and expenses. 2 Story, Eq. Jur. § 1258, note 2; Story, Ag. §§ 229–231; Veil v. Mitchell, Adm'r, [Case No. 16,908;] 1 Amer. Lead. Cas. 674; Thompson v. Perkins, [Case No. 13,972;] Yates v. Curtis, [Id. 18,127.]

The insurance money is the substitute of the plaintiff's property, insurance being a contract of indemnity or security. Ang. Ins. 1; 3 Kent, Comm. 320.

Bicknell and Skinner's only insurable interest in plaintiff's cotton being their liability to pay his draft against them, they are mere trustees of the insurance money, in case of loss, for this purpose; and if they are released from all liability on the draft, and their expenses are all paid, they are the unconditional trustees of the insurance money for his use. Lazarus v. Commonwealth Ins. Co., 2 Amer. Lead. Cas. 845, and note.

F. E. Hoppin and C. S. Bradley, for respondents Bicknell and Skinner.

A consignee, factor, or agent, having accepted bills of exchange upon certain goods (like these defendants), stands in the same situation as a mortgagee, and has an insurable interest in the goods entirely distinct from that of his consignor. 1 Phil. Ins. p. 166, §§ 289, 309; 2 Phil. Ins. § 1243; Wolff v. Horncastle, 1 Bos. & P. 316; Godin v. London Assurance Co., 1 Burrows, 490.

This policy, having been obtained by the defendants, as consignees, upon their interest, and with their money, and without the privity or direction of the consignor, belongs to the defendants only, and the proceeds of it, representing only the interest of the defendants, cannot be taken by the consignor or his assigns. Neale v. Reid, 1 Barn. & C. 657; 1 Ang. Ins. §§ 60a, 60b, 73; King v. State Mutual Fire Ins. Co., 7 Cush. 1; Dobson v. Land, 8 Hare, 216; White v. Brown, 2 Cush. 412, 417.

There is no analogy between this case and the right of stoppage in transitu as claimed by complainant's bill; and if there be any, it is fatal to the claim of the consignors if pretended to be exercised.

A court of equity has no jurisdiction in this case.

CLIFFORD, Circuit Justice. Marine insurance is a contract whereby one party, for a stipulated sum, undertakes to indemnify the other against loss or damage arising from certain perils or sea-risks to which his ship, merchandise, or other interest may be exposed during a certain voyage or for a certain period of time. 1 Arn. Ins. p. 2. Like other valid engagements between business men, it requires two parties to make the contract; and as a general rule no person can

maintain a suit on the policy against the insurers, unless he is named in the instrument, or unless there is some privity of contract, express or implied, by assignment or otherwise, between himself and the other .contracting party. Were there no other difficulty in the way of the complainant than the entire absence of all privity of contract between himself and the insurance company, that alone would be sufficient to defeat the right of recovery. Insurance on the goods in question was effected by the first-named respondents without instructions either from the consignor or the complainant, and without their knowledge or consent. They so allege in the answer, and every fact and circumstance disclosed in the record touching the transaction, goes to confirm the truth of the allegation. Neither the consignor nor the bank requested the cotton to be insured, or knew that the policy was in existence, until after the loss; and the whole record shows that, in point of fact, the insurance was effected for the sole and exclusive benefit of the first-named respondents. Their policy bears date more than seven months before the bill of exchange. was passed to the bank, and the terms of the indorsement on the policy furnish no grounds to infer that any other interest in the cotton was included in the insurance than that held by the consignees. Whether we look, therefore, at the terms of the policy, or of the indorsement on the same, or at the entire circumstances of the transaction, there is an utter failure of proof to establish any privity of contract between the complainant or the consignor and the insurance company, or to furnish any ground of inference in that direction. Both the consignor and the complainant corporation respectively had an insurable interest in the cotton, and either or both might have protected that interest against the perils of the voyage. Having chosen to do otherwise, and to remain their own insurers to the extent of their respective interests, they must stand the consequences of their own election. King v. State Mutual Fire Ins. Co., 7 Cush. 5.

But another answer may be given to the claim of the complainant in its present form, which is equally decisive against it. When the first-named respondents received notice of the consignment and had accepted the bill of exchange drawn against it, they thereby acquired an insurable interest in the cotton, which they might properly insure for their own security. They accordingly proposed to enter the risk under their open policy, with the corporation respondents; and the answer alleges that the insurance was effected by them upon their interest in the cotton, and that the complainant has no interest in the proceeds of the insurance, either at law or in equity. Consignees who have a mere naked right to take possession of the goods consigned, without being either intrusted to sell the goods on commission, or having a

lien upon them for their advances, cannot make a valid insurance of the same in their own names. for their own benefit, for the reason that they have no legal property in ·the subject-matter of the consignment, and therefore can only effect insurance on account of those who are so interested, and must aver the interest in those on whose account the insurance was made. Wolff v. Horncastle, 1 Bos. & P. 316; 1 Arn. Ins. p. 246. But consignees who have a lien or claim on the property, in respect of advances, or as commission agents, to whom it is intrusted for the purposes of sale, or as indorsees of the bill of lading, to whom a general balance is due, may effect an insurance on the property in their own names and on their own account, to its whole value, and recover thereon, at least to the amount of their lien, claim, or balance, although they have received no previous instructions from the consignor to insure, nor any subsequent ratification of the insurance. Where goods were consigned by a merchant to his factor, to whom a general balance was due, it was held by Lord Mansfield, in Godin v. London Assurance Co., 1 Burrows, 489, that such factor had an insurable interest in the goods so consigned, to the extent of his general balance, and might recover thereon, averring the interest to be in himself; and this, though the bill of lading had been indorsed to another party. In the same case, the party to whom the bill of lading had been indorsed, and to whom the merchant was also indebted for advances to a greater amount than the value of the cargo, was held clearly to have an insurable interest, and to be entitled to recover, under a policy effected on his own account, the full value of the insurance. As a general principle, there can be no doubt that consignees of goods being in advance to the consignors, or under acceptances for them, as in this case, may insure in their own name and on their own account, to the full value of the goods, and apply the proceeds to their own benefit, to the extent of their claims in respect of such advances and acceptances. But a consignee to whom property is consigned to be sold by him merely as ·factor of the consignor, or other party, though he has himself an insurable interest of his own to the amount of his advances, and perhaps of his commissions, is not merely, in his character as such consignee, vested with any authority to effect insurance on the consignment for his principal, while it is in transit. Any insurance so made by him, without instructions, will therefore be a voluntary insurance, so far as the principal is concerned, and its validity will depend upon its being ratified by the party for whose benefit it was made. 2 Phil. Ins. (4th Ed.) § 1858. From the general principle, that any executor[4] having a claim on

---

[4] [17 Lawy. Ed. U. S. Sup. Ct. Rep. 244, gives "creditor."]

property has an insurable interest to the extent of his claim, it follows, says. Mr. Arnould, that a mortgagee of a ship or goods has a distinct insurable interest in the mortgaged property, and may recover, in an action upon a policy effected for his benefit, averring the interest to be in himself, to the full amount of the debt, to secure which the mortgage was made. Mr. Phillips says that a consignee, factor, or agent, having a lien on goods to the amount of his advances, acceptances, and liabilities, stands in this respect precisely in the situation of a mortgagee; and as a general proposition we think his view of the subject is correct. 1 Phil. Ins. (4th Ed.) § 309. Applying these principles to the present case, it is clear that the first-named respondents had an insurable interest in the cotton to the amount of the acceptances they had made in that behalf, and, perhaps, also for such commissions as they would have been entitled to receive for the sale of the same in case it had not been lost on the voyage. According to the decision in Putnam v. Mercantile Marine Ins. Co., 5 Metc. [Mass.] 386, a commission merchant, to whom goods are consigned for sale, has an insurable interest in the goods, to the amount of his commissions on the sale, from the time the goods were shipped under the consignment; and the same court held, that he might make a valid insurance in anticipation of the consignment, and that the contract would take effect on the consignment being made, and the goods becoming subject to the risks insured against in the policy. Be that as it may, all the well-considered cases agree that a commission merchant or factor has a lien on the goods, to the amount of his advances, or acceptances, and that is sufficient to dispose of the case made in the bill of complaint. Courts of justice are not quite agreed whether the factor, in case the insurance exceeds the amount of his claim, may retain the excess to his own use, or whether he must be regarded as holding such residue in trust for the consignor. Some remarks of Mr. Justice Story, in the case of Carpenter v. Providence Wash. Ins. Co., 16 Pet. [41 U. S.] 507, indicate that his opinion was in favor of the latter theory. That case arose on a policy of insurance against loss by fire. He admits, however, that both mortgagor and mortgagee may each separately insure his own distinct interest in the property; and that where the mortgagee insures solely on his own account, if his debt be paid, the policy ceases to have any operation from that time; and if the premises be subsequently consumed, the mortgagor can take no advantage of the policy, for the reason that he has no interest in it. Remarks are also to be found in the opinion of the court in Robertson v. Hamilton, 14 East, 522, favoring the same theory. On the other hand, the supreme court of Massachusetts, in the case of King v. State Mutual Fire Ins. Co., 7 Cush. 1, held, in an elaborate opinion upon the question, that a mortgagee, who, at his own expense, insured his interest in the property mortgaged against loss by fire, without particularly describing the nature of his interest in case of a loss by fire before payment of the mortgage debt, has a right to recover the amount of the loss to his own use, without first assigning his mortgage or any part thereof to the insurers. To the same effect, also, are the remarks of Bayley, J., in Neale v. Reid, 1 Barn. & C. 657. He says it has never been decided that a person not bound to insure, but who elects to insure in order to cover payments if the goods do not arrive, may not apply the proceeds of the policy to his own use. The premium for the insurance comes out of the general means of the party effecting it, and diminishes the fund applicable to the claims of general creditors. As between them and the seller of the particular goods, they certainly would be entitled to the money secured by the policy. It is not the produce of the goods, but is a substitute for it, and not liable to the same burdens. Dobson v. Land, 8 Hare, 216. Policies of insurance often contain clauses indicating the intention of the parties to include within the benefits of the contract other interests than those of the party therein named; and whenever such a clause appears in the instrument, courts of justice are always inclined to give it an equitable and liberal construction. Such was the case of De Forest v. Fulton Fire Ins. Co., 1 Hall, 84, where the policy was effected "on goods as well the property of the assured as held by them in trust, or on commission." Advances had been made by the commission merchant to only part of the amount insured, and the question was, whether they had an insurable interest to the whole amount of the policy. On this state of the case the court held that the consignees had an insurable interest in the goods, on account of their own interest and as trustees, to their full value, which was covered by a policy in this form: they being liable to account to their principals for the excess of the insurance over the amount of their own claims. Carruthers v. Sheddon, 6 Taunt. 14. None of these cases, however, decide that where the insurance was effected solely on account of the interest of the factor, and where the pleadings and proof show an entire want of privity of contract between the party complainant and the insurers, that the former can in any manner derive any benefit from the insurance. But that question, in the judgment of this court, does not arise in this case, on the present state of the pleadings; and for that reason we forbear to express any decisive opinion upon the subject. Bill dismissed with costs.

[NOTE. On appeal to the supreme court the decree of the circuit court was reversed. Mr. Justice Swayne delivered the opinion of the supreme court, Mr. Justice Clifford dissenting. The opinion is nowhere reported, and not now accessible, but the following is the order which

was entered: "This cause came on to be heard on the transcript of record from the circuit court of the United States for the district of Rhode Island, and was argued by counsel; on consideration whereof, it is now here ordered, adjudged, and decreed by this court that the decree of the said circuit court in this cause be, and the same is hereby, remanded to the said circuit court for further proceedings to be had therein in conformity to the opinion of this court, and as to the law and justice may appertain." Bank of South Carolina v. Commercial Ins. Co., 17 Lawy. Ed. U. S. Sup. Ct. Rep. 245.]