Selden, J.
This case presents two questions which are entirely distinct in their nature, and in no manner dependent upon each other. The first relates to the interpretation, as between the insurer and the insured, of the clause to be found in most policies of insurance against fire, by which the insurance is made to extend, not only to goods belonging to the insured, but to those held by him “in trust or on commission.” It is quite apparent that the words “in trust,” as thus used, are not to be taken in any strict technical sense, which would limit their operation to cases where the title to goods had been vested in a trustee, subject to some specific trust to be executed by him—for several reasons. In the first place, they would be entirely unnecessary for any such purpose, and would add nothing whatever to the force of the policy. Again, the structure of the clause itself shows the meaning to be different. The words are “the property of the insured, or held in trust,” &c. The antithesis shows that the words “in trust” are meant to cover goods not the property of the insured. But goods held -in trust, in the technical sense suggested, would be as much his property, as between him and the insurer, as those belonging to him in his own right. The words “ in trust"" may, with entire propriety, be applied to any case of bailment, where goods belonging to one person are entrusted to the custody or care of another, and for which the bailee is responsible to the owner. In the few reported cases in which the question has arisen, the. decisions appear to have been uniformly in accordance with these views, and *404 no serious doubt seems to have been entertained on the subject.
But another question has arisen under this language which admitted perhaps originally of more hesitation, viz.: whether the clause, when inserted, was operative to cover the entire value of the property held in trust, or only the interest of the insured in it. In several cases in which this question has been presented, it has been determined in favor of the insured. In the case of De Forest v. The Fulton Fire Insurance Company (1 Hall, 84), the plaintiffs were commission merchants, and held the goods for sale upon commission. The language of the policy, which was the same as in the present case, was held to cover not merely the interest of the plaintiffs, but the entire value of the goods. I do not see that the circumstance that the operative words in that case were “on commission” while here they are the words “in trust” can be productive of any difference in principle; nor that the fact that there the plaintiffs established a custom on the part of commission merchants to insure the goods of their principals, can create any valid distinction between the cases; since the question must depend upon the construction of the terms used in the policy, irrespective of any obligation on the part of the insured to obtain it.
In the case, however, of Waters v. The Monarch Fire and Life Assurance Company (5 Ell. & Black., 870), there was no such feature. The plaintiff, who was a wharfinger and warehouseman, obtained from the defendants a policy upon the goods in his warehouse, and on “goods in trust or on commission therein.” He had goods in his warehouse belonging to his customers, upon which he had a lien for his charges, but in which he had no other interest. The report states that the plaintiff made no charge to his customers for insurance, and that they were not informed of the existence of the policy. There was no proof of any custom to insure under such circumstances. The warehouse having been burned, with all the goods it contained, the defendants voluntarily paid for the plaintiff’s own goods and the .amount of his lien on his cus *405 tomers’ goods; but refused to pay the value of the customers’ interest, beyond the hen. It will be seen, therefore, that this case presented the naked question we are considering, entirely disconnected with any other. It was the sole question in the case, and this circumstance gives additional weight to the unanimous determination of the court, that the plaintiff was entitled to recover the whole value of the goods.
This doctrine has been repeatedly recognized and followed, in cases which have arisen between the persons insured by such a policy and the owners of the goods held in trust; but I deem it unnecessary to refer to those cases here, as I am not aware of any authority to the contrary. I have no hesitation, therefore, in adopting the decision of the court in the case last cited.
The remaining questions relate to the rights and obligations created by such a policy, as between the party insured and the owner of the goods held by him in trust.
As the plaintiffs, in obtaining the policy in question, were mere volunteers, the principles applicable to the case are not modified by any agreement between them and the defendant, either express or implied, nor by any custom or usage imposing upon the plaintiff an obligation to insure. The question, therefore, must depend upon the established rules of the law of agency, and the general principles of justice and equity applicable to the case; except so far as they may be regarded as settled by authority.
The familiar doctrine, that where one acting as agent, although without any actual authority, makes a contract for the benefit of another, the latter may at any time afterwards, so long as the contract continues in force, upon being apprised of its existence, adopt the act of the agent, and thus entitle himself to all the advantages of the contract as fully as if originally made by his express authority, applies, of course, as well to policies of insurance as to any other species of contract; and it has even been held that the owner of the goods, in a case like the present, may affirm the policy within a *406 reasonable time after, as well as before a loss has occurred. ( Watkins v. Durand, 1 Port., Ala., 251.)
Although this conclusion was not essential to the decision in that case, it is unneccessary here to question its accuracy. The right of the owner of the goods to ratify or adopt such a policy, whether before or after a loss, must, from the nature of the case, be subject to certain limitations; that is, it must be subordinate to the right of the party who obtained the policy, to deal with it as he pleases, up to the time of its actual adoption. Until then it is plain that no interest is vested in the principal, or obligation imposed upon the agent. I speak now, of course, of a case where the act of the agent in procuring the policy was, as in the present instance, purely voluntary and not pursuant to any direction of the principal or obligation growing out of the nature of the business. Suppose in such a case the agent should surrender the policy to the insurer, receiving back the premium, or even gratuitously cancel it, what right of the principal or duty of his own would he thereby violate ? Clearly none. So long as the option of the owner of the goods to adopt or reject the policy continues, so long must the absolute control of the agent over the policy remain.
If, however, the agent has received money from the insurer, on account of the interest of the principal in the goods insured, the case is changed. He has no just claim to such money. It supplies the place of the goods consumed, and in equity belongs to the owner of the goods. It is this equity alone, which furnishes the foundation of the owner’s claim. The cases of Watkins v. Durand (1 Port., Ala., 251), and Siter v. Morrs, (13 Penn., 218), proceed, as I understand them, upon this principle] In the first of those cases, it expressly appears that the agent had included the goods of the plaintiff in his estimate of the loss, and in his claim against the insurer; and I entertain little doubt that the same facts existed in the other case, although this cannot be ascertained from the report. In cases like these, it is of no importance whether the policy was adopted before or after the loss; or whether it has been adopted at all. The right of recovery does not depend upon the adoption or *407 ratification of the contract; but upon the equitable right to the money, as substituted for, or proceeding from, the goods of the principal.
It follows from these views, that in order to support the judgment in this case it must appear, either that the defendant had elected to adopt the policy, before its force as an insurance upon his goods had been in any degree impaired, by any act of the plaintiffs; or that the latter had actually received money from the insurance company on account of the defendant’s goods. As I understand this case, although the facts are very imperfectly developed, neither of these circumstances appear. By the receipt introduced in evidence, it appears that the money was paid upon one of the policies upon the 12th of March, 1852; and the statement which precedes the opinion of the court below, shows that the whole amount of all the policies was received about that period.
At the time when the plaintiffs presented their claim to and settled with the insurance companies, the defendant had acquired no interest whatever in the policies. He had not then, so far as appears, ratified or adopted them. The plaintiffs, therefore, were at liberty to cancel or modify them at pleasure. It seems they presented no plaim against the insurance companies for any loss upon the defendant’s goods". The loss upon their own goods greatly exceeded the amount of all the policies, and they very naturally elected to claim for their own loss alone. This was equivalent to .ah election to cancel so much of the policy as purported to insure goods held by them in trust; which, as they were under no obligation to insert that clause, and as their act in doing so had not been adopted, they were, as we have seen, at entire liberty to do. The judgment of the Superior Court should be reversed, and there should be a new trial, with costs to abide the event.
All the judges concurring,
Judgment reversed and new trial ordered.