The opinion of the Court was delivered at this term by
Parker, C. J.
The touching at St. Jago, on the voyage home, was relied upon by the defendants as a deviation which destroys the action. But, it being in evidence, that vessels from the Isle of May usually touch at St. Jago for supplies, which are not always to be obtained at the Isle of May, the touching there was justifiable, and no deviation.
But the vessel went an intermediate voyage after her arrival at the Isle of May, under a contract with the governor of that island ; and the question is, whether that act is justifiable. The vessel is insured from Gibraltar to the United States, with liberty to touch at St. *63 Ubes or the Cape de Verd Islands for salt. Under this policy she might have sailed from one to another of those islands, and successively to all of them, for salt; but her arrival at any one of them, where salt was to be obtained, and where the cargo was intended to be taken on board, determined the voyage to those islands, and the vessel could not proceed from thence to another for the purpose of earning a freight, or for any other purpose, under the policy. Now the Me of May is one of the Cape de Verd Islands, at which the vessel might touch ; she did touch there, and it was determined to take on board a cargo there ; but she went thence to St. Jago and Fuego, not for the purpose of procuring salt, * but on a contract with the governor, to get provisions for the island, and then returned to the Isle of May, to prosecute her homeward voyage. This was undoubtedly a deviation, unless it can be shown to have been necessary for the safe prosecution of the voyage. Mere purposes of convenience will not excuse a deviation, nor will any thing but actual necessity.
It was contended, that this voyage was necessary, because there was a scarcity of provisions and water, and the crew of the vessel might have suffered. This, perhaps, would be a sufficient excuse, if the necessity, on which it is founded, did not arise from the negligence of the master ; if it did, the owners cannot avail themselves of it, to excuse a deviation. The voyage from Gibraltar was to the United States, with liberty to touch at the Cape de Verds. The vessel should have been sufficiently found at Gibraltar, to enable her to stay and load at the Isle of May, without depending upon procuring provisions there. Indeed, the necessity, which is alleged, seems to prove that the ship was not seaworthy at the time the policy was to take effect.
But it was confidently insisted, that, as the effect of this expedition,. at the request of the governor, was to shorten the duration of the voyage, by enabling the master to obtain his cargo much sooner than he otherwise could, it ought to be considered as done for the benefit of all concerned, and not as amounting to a deviation.
But masters have not a right to speculate, in this manner, upon the possible advantages of pursuing a route which does not belong to the voyage. They are to pursue the usual course, and let the consequences fall where they may. In this case the master probably thought he was advancing the interest of his employers, of the underwriters, and of all concerned, by getting his vessel loaded several weeks sooner than would have been his turn ; and yet it is almos* certain, that his very success, in being able to commence his homeward voyage so soon, was the cause of the disaster which befell his vessel. Certainly, had he arrived * at St. Jago a week later, he would have avoided the immediate cause of the loss.
*64 Notwithstanding it is established by the verdict, that the voyage was in fact expedited by the intermediate voyage to St. Jago and Fuego, we are of opinion, that voyage was, under the circumstances, an unjustifiable deviation. To test this, let us inquire whether the vessel was at the risk of the underwriters, from the Isle of May to Fuego and back. It was not within the terms of the policy ; it was not necessary, unless it had become so by the culpable neglect of the master. Had the vessel been lost upon that voyage, the underwriters could not have been held answerable. The policy, then, had ceased to protect the vessel ; and it is not possible that any thing subsequent should restore the obligation of the underwriters.
We are all of opinion, that the verdict must be set aside, and a

Mew trial granted.

[Robertson vs. Col. Ins. Co. 8 Johns. 383. — Ed.]