COLBURN and others *vs.* LANSING and others, Executors, &c.

A testator, by his will, gave an annuity of $150 a year to S. M. for her support, and directed that she should also be furnished with comfortable house room to keep house in, by herself. In an action to obtain a judicial construction of the will, it was referred to a master to ascertain what house or part of a house belonging to the testator's estate was suitable and proper to be set apart for the use of S. M. during her life. Such a house being designated, S. M. took possession thereof and continued to occupy the same. The executors were authorized by a decree of the court to pay the necessary taxes, insurance, &c. upon the house. They obtained a policy of insurance upon the house, for $800, in the name of L. as executor, and paid the premiums out of the funds of the estate. The dwelling house being destroyed by fire, while it was occupied by S. M., the insurers paid the insurance money to L. as executor. In an action by the residuary legatees against the executors, to recover such money; *Held* that the estate being charged with the expense of providing a residence for S. M., was directly interested that she should continue to occupy the premises instead of the executors being compelled to procure, for her, house room elsewhere, at the expense of the estate. That the estate had therefore an interest which was the subject of insurance within the principle settled by the Court of Appeals in *Herkimer* v. *Rice*, (27 *N. Y, Rep.* 173,) and which could have been enforced against the insurers.

*Held, also,* that the insurance, being in the name of L. as executor, enured to the benefit of the estate which he represented, and the insurance money belonged to the estate, and could be sued for and recovered by the residuary legatees.

It is competent for parties to a receipt to show for what purpose it was given; to what fund it referred, and to inquire into the consideration. So far, at least, a receipt may be explained by parol.

Where plaintiffs, in their complaint, state the facts in regard to a settlement at which a receipt in full was given by them; and allege that one item was not included in such settlement, and was not intended to be, a foundation is thereby laid for an investigation into the real merits of the transaction, and to authorize a proper adjudication in regard to the receipt.

THIS is an appeal from a judgment entered upon the report of a referee. James Woods, by his will, provided as follows : "I would provide for the support of Sally, the wife of Sheldon Main, in a comfortable manner during her life, but in such a way as that no part of any property I may have, or the avails thereof, may ever reach Sheldon Main, either for his support or for any other purpose relating to

him. The support of Sally must, therefore, be dealt out to her sparingly, from time to time, by my executors, in such way that no part of it may reach him, and such support for Sally shall not exceed one hundred and fifty dollars per year. *And she shall also be furnished with comfortable house room to keep house in, by herself.*" The will was proved as a will of real and personal estate, and the defendants were appointed executors thereof.

The testator left, at his decease, a large real and personal estate. The plaintiffs are *residuary legatees under said will.* An action was prosecuted to obtain a judicial construction of said will; and it was referred to a master to ascertain what house or part of a house belonging to the testator's estate was suitable and proper to be set apart for the use of said Sally Main during her life. And the decree provided that she should take possession of the house which should be designated by the master, and occupy the same until the further order of the court. Such house was designated, and she took possession thereof, and continued to occupy the same until it was destroyed by fire. Pursuant to a decree entered April 12, 1847, the same premises were conveyed to Benjamin Akin, as trustee, subject however to the right of said Sally Main to occupy and enjoy the same. In November, 1852, said Akin conveyed the said premises to John Tracy, subject to the same right of said Sally Main. By a decree dated January 26, 1847, the said executors were authorized to set apart securities, belonging to the said estate, to the amount of $12,000 to raise the necessary income to pay two annuities, one of $450 to Elizabeth Kerner, the other to the said Sally Main of $150 ; and also to pay the necessary and reasonable repairs, taxes, assessments *and insurance* upon the houses designated by said master in his report, for the use of the said Elizabeth Kerner and Sally Main. The executors obtained a policy of insurance upon the house occupied by said Sally Main, for the term of five years from September 16, 1847, which was continued to

April, 1863. In April, 1863, another policy was obtained from the Dividend Mutual Insurance Company of Glens Falls, insuring Obadiah E. Lansing, executor of James Woods' estate, $800 upon the said dwelling house for the term of five years from April 19, 1863, to April 19, 1868. A premium note of $7.20 was executed by said Lansing as executor. The premiums upon such insurance were paid by the executors out of the funds of the estate. The dwelling house, while in the occupancy of the said Sally Main, was totally consumed by fire on or about the 15th April, 1864, and the said company paid the insurance money, $800, to said Obadiah E. Lansing. After the house was destroyed, the executors, at the expense of the estate, procured house room elsewhere for said Sally Main until her death, which occurred July 24, 1864, and such expense was charged by the executors in their account against the estate, and allowed. Subsequent to the receipt of said $800, the executors paid over to the plaintiffs, the amount to which they were entitled, as residuay legatees, under the said will, not including the $800, and took the following receipt:

"*North Greenbush, October 5, 1864.*

We, the subscribers, respectively have received from O. E. Lansing and Martinus Lansing, surviving executors and trustees of the estate of James Woods, deceased, on final settlement of all claims and demands of every name and nature and kind which we now have or ever have had against the estate of James Woods, deceased, or against the executors and trustees of said estate."

The plaintiffs proved that at the time the receipt was executed, a conversation occurred between the plaintiffs and said O. E. Lansing in regard to the $800 insurance money, and said Lansing stated that he was ready to pay it over when it was ascertained to whom it belonged. It was admitted upon the trial that the $800 was not included in the account which was settled, and was not intended to be included. Upon these facts, the referee awarded the said fund to the

plaintiffs, and judgment was accordingly entered against the said Obadiah E. Lansing, and he appealed to this court.

*Hugh McClellen* and *A. J. Parker*, for the appellants.

*J. Lawson*, for the respondents.

*By the Court*, INGALLS, J.   The testator, by his will, did not designate any particular premises to be occupied by Sally Main, but simply imposed upon the executors the duty to provide *comfortable house room* for her to keep house by herself during her natural life.   By the decree of the Court of Chancery, certain premises were designated for her to occupy until the further order of the court.   While she was thus occupying the premises, the said O. E. Lansing procured an insurance upon the house, in his own name as executor, for $800, and the house having been destroyed by fire, the company paid to him, as such executor, the said sum. Subsequently thereto the said executors, at the expense of the estate, provided house room for the said Sally Main until her death.   By the will no particular part of the testator's estate was charged with the expense of providing for Sally Main.   The decree of the court, while it designated the premises which she was to occupy, also provided that the executors should pay from the estate such amount as was necessary *to keep the building insured.*   The provision in the will, for Sally Main, was unconditional, and the estate being charged with the expense necessary for its performance, was directly interested that she should continue to occupy said premises ; for as soon as she ceased to occupy the same, the executors were compelled to procure for her house room elsewhere, at the expense of the estate ; and to provide against the latter contingency, the insurance was effected by the executor, O. E. Lansing, and the expense attending the same was paid from the funds of the estate, *and such insurance was obviously for the benefit of such estate.*   The estate had,

in my judgment, an interest which was the subject of insurance, and could have been enforced against the said company if payment by them had been refused.

In *Herkimer* v. *Rice*, (27 *N. Y. Rep.* 173,) Denio J. remarks : " The law does not require that the assured shall have an estate or a property in the subject of the insurance. *It is sufficient that he have a direct pecuniary interest in its preservation."* (*See also Angell on Insurance*, § 57 ; *Locke* v. *N. A. Ins. Co.*, 13 *Mass. R.* 67 ; *Ex parte Yallop*, 15 *Ves. Jr.* 60 ; *Hammond on Insurance*, 21.)

It is certainly very clear that the estate was directly interested in the preservation of the house insured ; for its destruction at once subjected the estate to the expense of providing for Sally Main elsewhere. The insurance was to O. E. Lansing, executor, which was authorized and enured to the benefit of the estate he represented. (*Herkimer* v. *Rice*, 27 *N. Y. Rep.* 173, *above cited. See also Angell on on Insurance*, § 79.)

The case at bar is clearly distinguishable from *Wyman* v. *Wyman*, (26 *N. Y. Rep.* 253.) In that case the insurance was procured by the intestate for his own benefit, and the loss occurred after his death, and it was held that the interest in the insurance followed the subject insured, and passed to the heirs. In this case the insurance was effected by Lansing, in his own name, it is true, but in the character of executor and in discharge of the trust, and obviously for the purpose of saving the estate the expense of procuring another tenement for said Sally Main, in case the building was destroyed by fire. The purchaser of the premises could not properly claim the money, as the insurance was not effected in his name, nor for his benefit, or made payable to him in case of loss. If the company had refused payment, I do not perceive how a recovery could have been had in favor of such purchaser ; all the facts would have been against him, and there could not have been the slightest pretense that Lansing acted as the agent or trustee of such

purchaser. It is equally clear that Lansing could not have recovered the money for his individual advantage, as the facts would as effectually have defeated any such claim. Indeed there is no such pretense. Mr. Lansing claims to hold the money not for himself, but for the party to whom it legally belongs. Such was the attitude he assumed before this action was commenced. I think the facts show clearly that the insurance was effected for the benefit of the estate, by a party charged with the care and control thereof; and that there was an insurable interest, within the principle settled by the Court of Appeals in *Herkimer* v. *Rice*, above cited. The fund, therefore, belonged to the estate.

The receipt executed by the plaintiffs, under the circumstances, did not conclude them. It was competent for them to show for what purpose it was given, and to what fund it referred, and to inquire into the consideration ; and so far, at least, a receipt may be explained by parol. (*Filkins* v. *Whyland*, 24 *N. Y. Rep.* 338. *Truscott* v. *King*, 6 *id.* 161. *Haddock* v. *Kelsey*, 3 *Barb.* 100, 102.)

Again, the plaintiffs, in the complaint, state the facts in regard to the settlement, and allege that the $800 was not included in that settlement ; nor was it intended to be, and a foundation was thereby laid for an investigation into the real merits of the transaction and to authorize a proper adjudication in regard to such receipt. (*Despard* v. *Walbridge*, 15 *N. Y. Rep.* 374, 378. *Hodges* v. *The Tenn. M. Ins. Co.*, 8 *id.* 416.)

Again, the item of $800, under the circumstances, might with propriety be regarded as a transaction by itself, as it was conducted by and in the name of O. E. Lansing, as one of the executors, and not in the name of all. Martinus Lansing, the co-executor, testifies that he had nothing to do with that matter. This item was not included in the settlement, and the receipt by its terms runs to the executors jointly, and for the amount which is conceded to be due, exclusive of the $800. And when such receipt was executed the said

O. E. Lansing stated that he was ready to pay over the money whenever it was determined to whom it belonged, and suggested that the matter should be submitted to the court for its determination. I therefore conclude that the referee properly disposed of the case, and that the judgment should be affirmed. In regard to the costs of the appeal, I am inclined to think, under all the circumstances, that they should be paid out of the fund.

Judgment accordingly.

[ALBANY GENERAL TERM, March 5, 1866. *Miller*, *Ingalls* and *Hogeboom*, Justices.]