THE GLOBE INSURANCE COMPANY OF CINCINNATI, Plaintiff in Error, v. ELIZABETH W. BOYLE ET AL., Defendants in Error.

Action on policy of fire insurance, issued to " E. W. B., executrix," on property devised in equal moieties to the testator's children, and E. W. B., his widow and executrix. It was proved that the underwriter was informed that the policy was to be for the benefit of the estate of the deceased.

*Held,* that evidence to explain the object of the application for the policy, and the manner of its issue was admissible, not to vary the contract, but to aid the court in interpreting its true meaning.

That E. W. B., in her capacity as trustee for creditors and devisees, had, as executrix, an insurable interest in the whole property.

That under the Code, alternative relief may properly be asked in a petition and granted by the court.

GENERAL TERM.—Error to Special Term to reverse the judgment rendered there against the plaintiff in error, who was the defendant below. The facts on which the judgment below was rendered were as follows:

In 1865, Stephen S. Boyle died, seized of four warehouses, numbers 53, 55, 57 and 59, on Columbia street, Cincinnati, between Sycamore street and Broadway. By his last will he made his wife, Elizabeth W. Boyle, executrix, and devised one-half his realty to her and the other half to his children. The wife and children together were the plaintiffs. On the 8th day of January, 1866, a policy of insurance against fire was issued by the defendants to the plaintiffs, in the name of " Elizabeth W. Boyle, executrix," on the above property. It was proved that the vice-president of the insurance company who took the risk was told, when the application was made to him, that the policy was for the benefit of the estate of the deceased. This policy was afterward renewed, and after the renewal the premises were destroyed by fire.

The defendant having declined to pay the loss, on the ground of want of insurable interest in Mrs. Boyle as executrix, this action was brought.

The original petition was demurred to, and the demurrer

sustained by the court, with leave given to amend the plead-
ing. An amendment was made, setting forth the facts as
stated, alleging Mrs. Boyle's interest as trustee for the credit-
ors and heirs of the deceased, as well as her interest and that
of her children under the will. To this amendment a de-
murrer was also filed, which was overruled.

The defendant then answered, denying generally its lia-
bility, and claiming that it had insured only the interest
of Mrs. Boyle, and not that of her children.

On the trial at Special Term, on submission, judgment
was given for the plaintiffs, the court finding the facts as
stated, and that the plaintiffs were entitled to recover the
whole insurance, which was assessed at $11,816.34.

A motion for a new trial was made and overruled, and a
writ of error taken to General Term, to reverse the finding
and judgment of the court below.

*Cox, Burnett & Follett,* for plaintiff in error.

*Hoadly & Johnson* and *Lincoln, Smith, Warnock & Stephens,*
contra.

STORER, J. Two questions, it appears to us, if carefully con-
sidered and answered, must decide the controversy between
the parties.

First. May we not receive evidence to explain the object
of the original application for the policy, as well to indicate
the extent of the risk, as also to show what the contract
between the parties really meant, and what the underwriter
must have understood it to mean?

The rule as to this point has been very clearly laid down
by our Supreme Court in *Hildebrand* v. *Fogle,* 20 Ohio, 147,
and since recognized in a number of cases which we need
not refer to. "In expounding a written instrument, the at-
tendant and surrounding circumstances are competent evi-
dence for the purpose of placing the court in the same situ-
ation and giving it the same advantages for construing the
instrument as the parties possess who executed it. The object
or tendency of this evidence is not to controvene or vary the

terms of the instrument, but to enable the court to have an enlightened understanding of the subject matter in reference to which it has been used."

This is but the exposition of the law as it is now recognized by the English and American courts, and does not trench upon the general rule that an instrument can not be explained by parol testimony. It merely places the litigants before the court, occupying the same position they sustained to each other when the contract was made. And this principle is applied most liberally when we are called in to interpret a policy of insurance, otherwise it would be difficult, if not impossible, in many cases, for the real parties in interest to recover, as when the insurance is made in the name of another as agent or broker, or by any party for whom it may concern, dependent upon the subsequent assent of the true owner to the contract.

Applying this rule to the case before us, we find it proved that when the application for the risk was made by the agent of Mrs. Boyle, the underwriters well knew that the property to be insured had belonged to her husband at his decease, and that they were particularly advised that the object of the insurance was to secure his estate from loss. Moreover, Mrs. Boyle, under her husband's will, was devisee in fee of a full moiety of his real estate. It was also proved that the agent who applied to the underwriters was given a slip of paper upon which was written "Elizabeth S. Boyle, executrix," and this he handed to the vice-president of the company, by whom the description of the party insured was inserted in the policy; that when the first policy expired it was renewed for the same premium and in the same manner as we find the original was made. A year of insurance had then elapsed, and a second risk is assumed after premium paid, without any exception to the right of Mrs. Boyle to insure the interests she represented; and when the buildings are consumed she is told, for the first time, she had no insurable interest at stake.

We are pressed now with the question, was the contract

between the parties made in good faith, and as the name of the wife of the former owner alone is described, did the insurer intend to cover the property in the policy against loss by fire to the full extent of the sum insured?

It is obvious to us, if we do not answer the question in the affirmative we must regard the agreement as "*nudum pactum*," having the semblance of a contract but in reality of no value, while the assured, during the whole term of its existence, honestly depended on it for her security, and the insurer, by his silence, intimated no doubt of its validity. If the word "executrix," added to Mrs. Boyle's name in the policy, is rejected, she still had an insurable interest as devisee, while if retained we may resort to parol evidence to prove of whose last will and testament she was executrix; and it necessarily follows, upon the testimony in the record, that the underwriters were fully advised for whose benefit she was acting. She was, by virtue of her appointment, invested with a trust which extended to the protection of the testator's entire estate. In case it had become necessary to subject the realty to the payment of debts, the equitable lien of the creditors, which our law upholds, might very properly be regarded as an insurable interest under the acknowledged rule, that it is not essential that there should be a direct personal interest in the subject insured; but, on the contrary, it may be an interest in its preservation only. Such we believe, from the proof in the case, was the understanding of all the parties when the contract was made.

But it is urged that the executrix, as such, has no interest within the rule we have just laid down that can be protected by insurance, and that there is no liability therefore upon the policy. Technically speaking, her power is limited generally to the administration of the testator's personalty; but connected with the statement of the agent, made to the defendant at the time the risk was taken, we are satisfied the estate of the testator was represented as the real subject at risk, and the underwriters were willing to insure it, and we can not permit what we must believe was the

*bona fide* expectation and understanding of the parties at the inception of the contract, at this late day to be disappointed by technical objections, which we may fairly infer were not in the mind of the assurer until called upon to indemnify the assured for her loss.

We need not multiply authorities upon this point, though we find very analogous cases decided by courts of the highest authority, when the principle we have stated has controlled their decisions. *Routh* v. *Thompson*, 13 East, 274; *Herkimer* v. *Rice*, 27 N. Y. 179; *Colburn* v. *Lansing*, 46 Barb. 37; *Phelps* v. *Gerhard Insurance Co.*, 9 Bosworth, 410; *Bidwell* v. *N. W. Insurance Co.*, 19 N. Y. 182; *same case*, 24 N. Y. 303; *Shawmut Sugar Co.* v. *Hampden Insurance Co.*, 12 Gray, 540; *Vairin* v. *Canal Insurance Co.*, 10 Ohio, 223.

We feel that we violate no legal principle in our decision upon this point, which involves in reality the merits of the whole controversy; and our decision would lead, if we held otherwise, to a manifestly unjust and inequitable result.

The second question which arises in the controversy before us is, whether the relief asked by the plaintiff is not rather the reformation of the contract than a direct judgment upon it as it is now presented. To this we may well answer, that in every case where a reformation of the instrument is necessary, we may, in the same action, reform it and adjudicate finally upon the merits. This avoids circuity of action, and yet enables the parties to litigate to their full extent their several claims.

But no such decree, we think, is necessary. Though alternative relief is asked in the petition, we are not bound to consider every claim arising out of the same matter, if we can, satisfactorily to ourselves, on legal principles, find authority to determine the rights of the parties by a fair construction of the contract itself and thus settle the controversy. Hence, it is no objection to a petition that the plaintiff asks alternative relief. *Young* v. *Edwards et al.*, 11 How. Pr. 202; *Landon et al.* v. *Hepburn*, 3 Sand. 668. It is also held, under the New York Code, of which our own

ıs nearly a copy, that after answer filed, any relief consistent with the frame of the issue, and irrespective of the prayer, may be granted. *Jones et al.* v. *Butler*, 20 How. Pr. 189; *Marquat* v. *Marquat*, 12 N. Y. 341; *Emery* v. *Pease*, 20 N. Y. 62. We adopt these decisions as a just exposition of the practice in cases like the present. It divests the question raised by counsel of all difficulty, and enables us to look at once at the real points at issue, which, as we understand them, are but these: Did the parties enter into a contract, fully understanding its object; was the plaintiff acting for the estate of the testator; did the policy cover both the interests of his widow and his heirs, and is the defendant therefore legally bound to indemnify them for the loss they have sustained?

Having carefully considered the evidence contained in the record, we have no difficulty in deciding in favor of the plaintiff, and her right to recover.

The judgment at Special Term will be affirmed.