By the Court.—Freedman, J.
Ina marine insurance, whether it be on the ship, freight, or cargo, or the commissions or profits to accrue upon the cargo, the assured is understood impliedly to warrant, hy the mere fact of effecting the insurance, independently of the particular terms used, that the ship is at the commencement of the voyage seaworthy ; namely, that the materials of which the ship is made, its construction, the qualifications of the captain, the number and description of the crew, the tackle, sails, and rigging, stores, equipment, and outfit, generally, are such as to *70 render it in every respect fit for the proposed voyage or service (1 Phillips on Ins. § 695, and cases cited).
This warranty extends to the qualities and defects of the vessel, unknown, and that could not have been known, no less than those known, to the assured (Ib.).
The warranty is a condition precedent to the policy attaching, and the burden is upon the plaintiff to prove seaworthiness, whether the loss or injury proceed from a want of it in any particular or not (Hazard v. New England Ins. Co., 8 Pet. 581).
The standard of seaworthiness varies at different places, and, in general, that must be taken which rules at the place where the vessel belongs. So, too, this standard varies according to the character of the vessel, her location, the voyage she is to undertake, or the service she is to perform. Thus, if she is in port, she may be seaworthy for that place, although not for sea. If on the ways for repair, she may be fit and sufficient for that condition, although she would not be fit to be waterborne. So, too, the insurance may be for a mere .temporary purpose, as the going from one harbor to another, or even across a harbor or a strait, or a brief navigation upon inland waters, or while being safely launched ; and, if the ship be sufficient for this purpose, it will not be necessary that she should be in a condition to go to sea (1 Parsons on Marine Ins. 886, 387, and cases cited).
Thus, in Cobb v. New England Mutual Marine Ins. Co. (6 Gray, 192), insurance was effected on a vessel when waterborne, at and from Perry, with permission to go to Eastport and thence to a southern place ; and it was held that it was sufficient if the vessel was in a fit condition to go to Eastport while she sailed for that place, although she was not fit for sea.
The obligation may also be lessened, enlarged, superseded, or waived, by the parties. A vessel may be offered for insurance and insured that will not admit of *71 being put into that condition of seaworthiness for the intended voyage which is ustial and requisite in ordinary cases.
But any such change or waiver must be clearly established. A survey of the ship by surveyors acting for the underwriters, preliminary to the agreement to insure, even when done in pursuance of an express standing regulation of the insurance company, is not a waiver on their part of their right to insist on the implied warranty of seaworthiness (1 Phillips on Ins. § 753, and cases cited).
Myers v. Girard Ins. Co. (26 Penn. St. 192), was an action on a policy of insurance on the iron hull stern-wheel steamboat Governor Moorhead, for one trip from Philadelphia to Port Washington, N. C. The boat was new, built in Philadelphia, and was to be taken to North Carolina to run on the Tar river as a passenger and mailboat. She proceeded down the Delaware river, but the steam got down, the furnace- refused to draw, and she put in at Leedsburg, Morris river, and after an ineffectual attempt to make her machinery work properly, the captain took her back to Philadelphia, and, while at her berth at the wharf, during the same night, she sunk, and considerable damage was doné. The witnesses all testified that she was not built for ocean navigation, but was adapted for river navigation, but were of the opinion that she could, with care, in favorable weather, be taken from Philadelphia to Port Washington. The company knew she was a river boat. One witness testified that he had surveyed her and communicated the facts as to the character of the boat and the trade she was intended for, to the secretary of the company, before the insurance. A nonsuit having been granted on the ground t,hat she was unseaworthy, the supreme court, on appeal, held as follows, viz:
“We see no evidence from which an inference could *72 be drawn that the insurance was to stand good without reference to the ability of the steamboat to make the trip. It may be conceded that the insurance company knew that the boat was built for the river trade, and that it had been examined by the agent of the company before the insurance, but a Avaiver of the implied covenant of seaworthiness for the particular voyage insured does not follow from either of these circumstances, or both combined. All the authorities establish that a waiver of seaworthiness, when not expressed in the contract of insurance, is only to be inferred upon clear evidence that the insurer knew that the vessel was unfit to perform the voyage insured, or that a full representation was made by the assured of the defects of the ship before the completion of the contract.
‘ ‘ The assured is not bound to make any representation as to the condition of the vessel at the inception of the risk, for this is cured by the implied warranty of seaworthiness; but if he wishes to avoid the implied warranty by a disclosure of the defects, he must take care that the disclosure is full and complete. A mere statement that a vessel is intended for a particular trade, although that trade may be less hazardous than the voyage insured, will not cast the risk of seaworthiness upon the insurer ; nor does it follow from ah examination, that defects in the machinery of a steamboat were discovered and considered in the contract of insurance.”
The rule clearly deducible from all the authorities is
1. That it is competent for the underwriter to say, in effect, to the applicant for insurance : “ You are or represent the owner of the vessel, who is bound to know all about her. For my own protection I shall look as far as I deem it expedient, but, after all, I shall rely upon the warranty of the seaworthiness of the ves *73 sel to encounter with safety the ordinary perils of the voyage upon which you propose to send her; ” and
2. That the burden of establishing a different contract rests upon the assured.
This rule may in some instances operate as a harsh one, but it is a reasonable and salutary one, and public policy is against its relaxation in favor of the owner, because upon its enforcement depends in a great degree the safety of the crew and passengers.
By the policy in question, dated November 21, 1876, and issued to the Newark Transportation Company, the defendant insured the steamboat Novelty at and from Newark, N. J., to the St. Johns River, Florida, with privilege of port or ports on the way. One of the clauses of the policy further provided that it should be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at; any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to the insurance.
Upon the trial the vessel was shown to have been built in 1869, at Philadelphia, to run by way of experiment, as a fast river boat. .She had two high-pressure locomotive boilers, and engines of the locomotive type, two on each guard, which were adapted to the use of and required fresh water. The mode in which the power was applied to the wheels was novel and pecu-. liar, and in the opinion of some of the witnesses, in-itself, rendered her unseaworthy ; and when she left on her voyage, she h^d only water enough for two days. The insurance was made upon a survey of Captain Stuart, which did not refer to this novel arrangement of the machinery and the peculiar application of the propelling power, but rated the vessel as' “A, 1M, for sound and inland navigation.” In making this survey Captain Stuart was shown, and held to have acted as the agent of the assured, and not as the agent of the de *74 fendant. The survey was not made a part of the policy, nor in any way therein referred to.
Nevertheless, the learned judge who presided at the trial, ruled that, as matter of law, the warranty of seaworthiness had been modified by the facts that the vessel had been built for sound and inland navigation, that the defendant had notice of it, and that by the policy she was described as “the steamboat Novelty and, entertaining these views, he refused, though specifically requested so to do, and against defendants’ exception, to leave the question to the jury whether in point of fact there was any waiver or modification.
Under the principles and authorities already referred to, and in view of the fact that there was abundant evidence upon which the jury mi^ht have found a breach of the warranty in case there was no waiver or modification of it, this charge cannot be sustained.
The policy was for a voyage from Newark, N. J., to St. Johns River, Florida, with privilege of port or ports on the way. Under the privilege thus accorded it was not strictly necessary that the vessel, in point of construction, repairs, and equipment, should be seaworthy for the whole voyage as a continuous trip. The cases cited by the learned counsel for the defendant do not go to this extent, for Taylor v. Lowell (3 Mass. 331), and Merchants’ Ins. Co. v. Clapp (11 Pick. 56), did not involve the question ; in Fontaine v. Phoenix Ins. Co. (10 Johns. 58), there was no liberty clause ; in Moses v. Sun Mutual Ins. Co. (1 Duer, 159), the decision was placed upon the ground that there was no evidence of any loss against which the defendants, by the just construction of the policy, undertook to indemnify the assured ; and the view expressed in Kettell v. Wiggin (13 Mass. 67), that the vessel, insured from Gibraltar to the United States, with liberty to touch at the Cape de Yerd Islands, should have been sufficiently found at Gibraltar to enable her to stay and load at the Isle *75 of May, without depending upon procuring provisions there, must be read in connection with the fact that the liberty clause in that case authorized the vessel to touch at said island for salt only.
The plaintiff was bound, however, to prove that the vessel, in point of construction, repairs and equipment, was in all respects competent, under the privilege accorded to her to use a port or ports on the way, to continue and complete the voyage so insured, and to encounter all the ordinary perils and dangers of it with safety. Upon his own showing it appeared that the proposed voyage ran along a dangerous coast, along which the gales are apt to be sudden and severe, and the sea is apt to get up high in a very short time, and the currents run ^ith the wind, and that a vessel overtaken by a storm on certain parts of that coast is likely to find it difficult and hazardous to get into a harbor or inlet. It was for the dangers of such a voyage, inclusive of the risk incident thereto that in case of a storm the vessel might not be able to reach a harbor, that the vessel, in the absence of a waiver or modification, had been warranted seaworthy.
The description of the vessel in the policy as “ the steamboat Novelty” is not of itself evidence of a partial waiver or modification of the warranty, nor does it become such evidence when taken in connection with the further fact that the véssel was built for sound and inland navigation, for notwithstanding the latter fact she might have been originally built so exceptionally strong as to be fit for the proposed voyage, or she might have been rendered sufficiently strong for the occasion. Nor is notice to, or knowledge in, the company'sufficient per se. All these matters constituted only circumstances to be considered by the jury in connection with the other facts of the case bearing upon the same point. Upon the whole case the question of partial waiver or modification of the warranty was one of *76 fact, and it was error to take it from the jury, and to charge them that the obligation to prove seaworthiness was modified by the fact that she was known to have been built for sound and inland- navigation, and that, except as to the engines, the Newark Transportation Company was only bound to make her equal in seaworthiness to the average of vessels navigating the Sound and inland waters.
As the error referred to necessitates a new trial, it is unnecessary to consider the other questions presented by the appeal.
The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.
Curtis, Ch. J., concurred.